DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Borden Chemical, Inc., has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding permanent total disability ("PTD") compensation to respondent Homer Mourn, Jr., and to enter an order denying said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that this court should issue a writ of mandamus ordering the commission to vacate its staff hearing officer's ("SHO") order of January 14, 2003 awarding claimant PTD compensation and, after eliminating Dr. James E. Lundeen's report from further evidentiary consideration, enter a new order that adjudicates the PTD application.
 {¶ 3} Respondent Mourn filed an objection to the decision of the magistrate asserting that the magistrate erred in concluding that the report of Dr. Lundeen was not evidence upon which the commission can rely to support its award of PTD compensation and, in doing so, acted as a "super commissioner" second-guessing the finding of the commission.
 {¶ 4} The objection to the magistrate's decision is overruled, and the decision of the magistrate is adopted by this court for the reasons stated therein. We agree with the magistrate that the report of Dr. Lundeen is flawed by his inclusion of the cervical disc surgery to his calculations of whole person impairment.
 {¶ 5} Following an independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it.
 {¶ 6} A writ of mandamus is issued ordering respondent, the Industrial Commission of Ohio, to vacate its SHO's order of January 14, 2003 awarding claimant PTD compensation and, after eliminating Dr. Lundeen's report from further evidentiary consideration, enter a new order that adjudicates the PTD application.
Objection overruled; writ granted.
Bryant and Klatt, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Borden Chemical, Inc.,:
Relator, :
 :
v. : No. 03AP-1213
 :
Homer Mourn, Jr. and Industrial : (REGULAR CALENDAR)
Commission of Ohio, :
 :
Respondents. :
 MAGISTRATE'S DECISION Rendered on June 25, 2004 Earl, Warburton, Adams Davis, and Bruce L. Hirsch, for relator.
Stanley R. Jurus Law Office, and Michael J. Muldoon, for respondent Homer Mourn, Jr.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
IN MANDAMUS
 {¶ 7} In this original action, relator, Borden Chemical, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent Homer Mourn, Jr., and to enter an order denying said compensation.
Findings of Fact:
 {¶ 8} 1. Homer Mourn, Jr. ("claimant"), has two industrial claims arising out of his employment as a laborer or machine helper for relator, a self-insured employer under Ohio's workers' compensation laws. Claimant's February 18, 1981 injury was initially allowed for "[a]brasions left hand and arm," and assigned claim number 806380-22. This injury occurred when claimant caught his left hand and arm in a machine while pushing on a roll of fabric. Following a jury trial in common pleas court, the industrial claim was additionally allowed for "acute torticollis; left cervical brachial radiculitis with muscle spasms." The record before this court does not indicate specifically when the commission officially recognized the additional claim allowances. However, it can be determined from the record that the commission did recognize the additional claim allowances sometime after July 18, 1987, the date claimant filed the PTD application at issue here.
 {¶ 9} 2. Claimant also sustained an injury on March 16, 1981, which is allowed for "sprain left ankle," and assigned claim number 748551-22.
 {¶ 10} 3. On November 22, 1982, neurosurgeon David Yashon, M.D., wrote to claimant's primary care physician, stating:
I saw your patient 48-year old Homer Mourn Jr. on November 19, 1982. For the last three months he has had severe neck pain with radiation to the arms. He describes it as a burning sensation. There is no history of recent trauma, but he did have an injury via a beating fourteen years ago. The pain is made worse by a valsalva and he has missed a small amount of time from work because of it. He states that under your care for the last three weeks he feels 75% better.
Neurologically his examination is negative except for the possibility of descreased [sic] biceps jerk in the left arm. There is also an area of hypalgesia over the left biceps area.
X-rays of the cervical spine do show diffuse osteoarthritis which is somewhat severe.
I believe that he should have further two or three weeks of therapy under your care and if he is not materially better, then we could admit him to the hospital for a myelogram and surgery if indicated. Perhaps we should give him seven days of concentrated in-patient physical therapy course before deciding on a myelogram.
 {¶ 11} 4. On December 10, 1992, Dr. Yashon performed surgery which he describes in his operative report as "C5-6 laminotomy, foraminotomy." Dr. Yashon lists the preoperative diagnosis and the post-operative diagnosis as "left C5-6 radiculopathy."
 {¶ 12} 5. On December 13, 1982, Dr. Yashon wrote:
Homer Mourn came into the hospital and had a myelogram. It showed a large left, C4-5 defect consistent with a tight nerve root. It certainly appear[s] to be causing the pain in his neck and left arm. On December 10, 1982 I did a laminotomy at that level and decompressed an extemely [sic] tight nerve root. The etiology was osteoarthritis and there was no herniated disc present. Mr. Mourn is doing fine postoperatively * * *.
 {¶ 13} 6. Claimant never returned to work for relator following his December 10, 1982 surgery.
 {¶ 14} 7. A hospital report of record shows that, on May 16, 1983, Dr. Yashon had claimant hospitalized under an "admission diagnosis" of "cervical radiculopathy." Claimant was discharged on May 21, 1983, under a "final diagnosis" of "mild cervical spondylosis." According to the report, during claimant's hospitalization, laboratory and diagnostic studies were obtained. Claimant was treated with physical therapy cervical traction, and medications.
 {¶ 15} 8. On September 10, 1983, Dr. Yashon's office wrote to Borden for information on who was responsible for an outstanding balance owed to Dr. Yashon for medical services rendered to claimant, including the surgery. The September 10, 1983 letter indicates that Dr. Yashon had received substantial payment under Borden's employee healthcare plan underwritten by Metropolitan Life Insurance Company. The September 10, 1983 letter states that claimant had advised Dr. Yashon's office to bill the industrial claim for the balance due. According to the letter, Dr. Yashon's office had only recently been informed by claimant that the medical services were "job related."
 {¶ 16} 9. On July 28, 1987, claimant filed his first of three applications for PTD compensation. Following an October 24, 1991 hearing before two commission deputies, the deputies mailed a commission-approved order on May 21, 1992, denying the PTD application. The commission's order lists the allowed conditions for claim number 806380-22 as "[a]brasions left hand and arm." This commission order also lists the December 10, 1982 surgery as a "C5/C6 laminectomy [sic] and foraminotomy [sic]." It also indicates that a substantial amount of TTD compensation had been paid in the industrial claim to June 1998.
 {¶ 17} 10. On November 12, 1997, claimant filed his second application for PTD compensation. Following a June 2, 1998 hearing before a staff hearing officer ("SHO"), the SHO mailed an order denying the PTD application. The SHO's order of June 2, 1998 indicates that industrial claim number 806380-22 is allowed for "[a]brasions left hand and arm; acute torticollis; left cervical brachial radiculitis with muscle spasms."
 {¶ 18} 11. On July 19, 2002, claimant filed his third application for PTD compensation. In support of his application, claimant submitted a report, dated September 18, 2001, from James E. Lundeen, Sr., M.D. In his report, Dr. Lundeen correctly listed the allowed conditions of each industrial claim. Under the "History" section of his report, Dr. Lundeen simply noted "[s]urgical procedures; cervical spine surgery." During his examination, Dr. Lundeen obtained a 60 percent whole person impairment ("WPI") for the cervical spine, and an 18 percent WPI for the left ankle/foot.
 {¶ 19} 12. The 60 percent WPI for the cervical spine includes a nine percent WPI for the following:
Table 75, p. 3/113, 4th Edition AMA Guides
Cervical disc surgery with residual pain and rigidity posterior surgery.
 {¶ 20} 13. Following his WPI ratings, Dr. Lundeen opined:
On the basis of only the allowed condition(s) of these industrial claims, the medical histories and all medical information available at this time to this examiner, the findings on physical examination being both subjective and objective, it is my opinion that the claimant, Homer G. Mourn, is permanently and totally disabled as a direct result of the injuries in these industrial claims. There is no reasonable expectation of recovery from these injuries. The natures and extents of injuries sustained in these industrial accidents are more than sufficient to permanently remove this claimant from the industrial workplace setting. Furthermore, I opine that he has no potential for retraining.
(Emphasis sic.)
 {¶ 21} 14. On August 29, 2002, at Borden's request, claimant was examined by David C. Randolph, M.D. Dr. Randolph also reviewed the report of Dr. Lundeen and issued a report dated September 9, 2002. Dr. Randolph criticizes Dr. Lundeen's report:
There is an evaluation by James Lundeen, Sr., M.D., CIME dated 09/18/01. This references claim #806380-22 and #748551-22. Impairment ratings of the cervical spine are provided of 60% of the whole person and an additional 18% for his left ankle. The calculations which are enclosed in this report would indicate a complete lack of understanding of the use of the AMA Guides. He describes a completely absent reflex on either upper extremity with additional impairment ratings provided because of loss of grip strength, limited range of motion of the cervical spine and a finding of "severe joint laxity." This is unaccompanied by anything objective otherwise. He opines that the claimant is "permanently and totally disabled." No medical records are submitted for review.
* * *
I have read with interest the report submitted by James Lundeen, Sr., M.D., CIME and would note the following observations.
1.) Any conclusions reached with respect to his cervical spine clearly are reflective of conditions not allowed in this claim.
2.) The conclusions described by James Lundeen, Sr., M.D., CIME clearly do not reflect an understanding of the use of the AMA Guides.
3.) An impairment rating has been grossly exaggerated again reflecting a lack of understanding of the AMA Guides. He has "thrown in" additional impairment ratings based upon grip strength abnormalities, absent reflexes (curiously these involve absolutely every reflex which can be tested in both upper extremities) but provides no objective substantiation that these are reflective of any form of pathology.
4.) The report submitted by James Lundeen, Sr., M.D., CIME indicates the presence of "severe" ankle joint laxity for which he opines an 18% whole person impairment rating. Curiously, no one else has ever been able to replicate these findings.
It is my opinion following a review of this as well as a multitude of other evaluations performed by a variety of other physicians (all of whom are board certified in specialties such as physical medicine and rehabilitation, orthopaedics or neurosurgery) that no one else has been able to replicate the findings described by James Lundeen, Sr., M.D., CIME. It is to be noted that under the circumstances and especially considering the clear credibility issues associated with Mr. Mourn that the findings described by James Lundeen, Sr., M.D., CIME are objectively not supported anywhere else in this medical record.
It is my opinion this claimant is not permanently and totally disabled based upon the conditions listed as being legally allowed in this claim. As outlined above these are largely of a soft tissue nature. His subjective complaints are not substantiated by objective exam findings. These records clearly indicate that although the claimant indicates he has been completely off work since 1982 that this absence from work is not based upon either claim #806380-22 or #748551-22 but clearly have occurred as a volitional reflection of this claimant's desire to live his life in an alternative fashion. The objective records indicate that this claimant has been performing other tasks which are inconsistent with the concept that he is permanently and totally disabled.
It is my opinion that despite this claimant's claims to the contrary he is capable of sustained remunerative employment likely in at least a medium physical demand characteristic level. His physical examination does not support disability in any fashion certainly not based upon the above referenced worker's compensation claims herein described.
 {¶ 22} 15. On October 1, 2002, at the commission's request, relator was examined by orthopedist Boyd W. Bowden, D.O. Dr. Bowden reported:
DISCUSSION:
Utilizing the Guides to the Evaluation of Permanent Impairment, 4th
Edition, published by the AMA, Page 78, Table 42, a 3% whole person impairment is established for the left ankle since his plantar flexion capacity was only to 13%. No other abnormalities were noted in the left ankle.
Going to Page 104, a DRE Cervicothoracic Category III is established for this claimant with radiculopathy. It is to be noted that throughout the examination guarded motion was noted and an EMG on 8/5/94 shows the present [sic] of C5 or C6 radiculopathy, thus giving him 15% whole person impairment with reference to the cervical spine. With reference to his left hand 0% impairment is established for the left hand. Utilizing the Combined Value Charts, 15% + 3% = an 18% whole person impairment with reference to the allowed injuries.
OPINION:
It is the feeling of the examiner that the injured worker has reached MMI with reference to the allowed claims of left ankle sprain, abrasions left hand and arm, acute torticollis, left cervical brachial radiculitis with muscle spasms.
Based on the AMA Guides, 4th Edition, an 18% whole person impairment is established for this claimant. The Physical Strength Rating has been filled out.
 {¶ 23} 16. The commission also requested an employability assessment report from Barbara E. Burk, a vocational expert. The Burk report, dated November 15, 2002, lists "Employment Options" relating to the reports of Drs. Bowden and Randolph.
 {¶ 24} 17. Claimant's application for PTD compensation was heard on January 14, 2003 by an SHO. The hearing was recorded and transcribed for the record. During the hearing, relator's counsel presented the following challenge to Dr. Lundeen's report:
* * * Notes that the surgery that was in 1982 was not paid for under this claim but paid for under the Claimant's employer provided super accident insurance because — and the reason for that was because the surgery was for the — was for mild cervical spondylosis, that was the final diagnosis, and osteoarthritis. That bill was paid by Metropolitan Insurance Company and the doctor then asked Borden for payment of the deductible and Borden refused indicating that was not work related and that was the end of that. The surgery was not paid for, and it was for unallowed conditions.
As far as the — therefore, I think Dr. Lundeen's report is flawed. In the first respect he indicates he clearly considers the surgery and considers that as part of the claim finding 9 percent permanent total [sic] because of the surgery and here the surgery is not allowed in the claim given the fact that it was not paid for and not covered — not conditions that are allowed in the claim.
 {¶ 25} 18. In response to Borden's argument, claimant's counsel asserted:
The surgery was not paid for because he had surgery in 1982. The court — the jury trial never elapsed until 1986, I believe, so he had to have the surgery. Someone had to pay for it * * *.
 {¶ 26} 19. Following the January 14, 2003 hearing, the SHO issued an order granting the PTD application. The SHO's order states:
The Staff Hearing Officer relies upon the report of Dr. James Lundeen. This report supports the conclusion that the allowed medical conditions in these claims in and of themselves render the claimant permanently and totally disabled from engaging in any type of sustained remunerative employment.
Since it is the finding of the Staff Hearing Officer that the allowed conditions in these claims have on a medical basis rendered the claimant permanently and totally disabled from engaging in any sustained remunerative employment, the Staff Hearing Officer does not find it necessary to consider or to discuss the claimant's non-medical disability factors of age, education, and prior work experience[.] State, ex rel.Libbey-Owens Ford v. Indus. Comm. (1991) 62 Ohio St. 3d 6.
The start date of the payment of the Permanent and Total Disability Compensation is 09/18/2001. The Staff Hearing Officer chooses this date because it is the date of the persuasive report of Dr. James Lundeen.
 {¶ 27} 19. On December 8, 2003, relator, Borden Chemical, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 28} The issue is whether Dr. Lundeen's report is some evidence upon which the commission can rely to support its award of PTD compensation. Finding that Dr. Lundeen's report does not constitute some evidence upon which the commission can rely to support its PTD award, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 29} It is well-settled that the proponent of an award of compensation bears the burden of proof on entitlement. State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 656.
 {¶ 30} A claimant must always show the existence of a direct and proximate causal relationship between his or her industrial injury and the claimed disability. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. Nonallowed medical conditions cannot be used to advance or defeat a claim for compensation. Id.
 {¶ 31} The mere presence of a nonallowed condition in a claim for TTD compensation does not in itself destroy the compensability of the claim, but the claimant must meet his burden of showing that an allowed condition independently caused the disability. State ex rel. Bradley v.Indus. Comm. (1997), 77 Ohio St.3d 239, 242.
 {¶ 32} In his report, as previously noted, Dr. Lundeen obtained a 60 percent WPI for the cervical spine. The 60 percent WPI includes a nine percent WPI for the following:
Table 75, p. 3/113, 4th Edition AMA Guides
Cervical disc surgery with residual pain and rigidity posterior surgery.
 {¶ 33} The report of Dr. Lundeen is seriously flawed by his inclusion of the surgery into his calculation of WPI which was the basis for his opinion that claimant is permanently totally disabled. Presumably, Dr. Lundeen refers to the surgery performed by Dr. Yashon on December 10, 2002, which is described in the operative report as a "C5-6 laminotomy, foraminotomy," with a preoperative and postoperative diagnosis of "left C5-6 radiculopathy."
 {¶ 34} Significantly, in his December 13, 1982 report, Dr. Yashon opines "[t]he etiology was osteoarthritis and there is no herniated disc present."
 {¶ 35} Significantly, the industrial claim has never been allowed for osteoarthritis.
 {¶ 36} At the time of the December 10, 2002 surgery, the industrial claim was only allowed for "abrasions left hand and arm." There can be no dispute here that the industrial claim allowance did not support a causal relationship between the surgery and the industrial injury at the time the surgery was performed or even at the time Dr. Yashon sought payment for his services.
 {¶ 37} However, claimant's counsel seems to suggest at the January 14, 2003 hearing that the subsequent claim allowances relate back to the surgery so that the surgery can be said to be causally connected to the industrial injury. Claimant's counsel suggested at oral argument before this magistrate that the common pleas court jury considered the evidence relating to the surgery and that the common pleas court judgment granting the right to participate for additional conditions in the claim necessarily incorporated the 1982 surgery.
 {¶ 38} However, the record here only reflects that the industrial claim was subsequently allowed for "acute torticollis; left cervical brachial radiculitis with muscle spasms." There is simply nothing in the record before this court to show that the 1982 surgery was causally related to the industrial injury. Moreover, the subsequent claim allowances themselves do not readily indicate a causal relationship with the 1982 surgery.
 {¶ 39} It should be further noted that Dr. Lundeen incorrectly describes the 1982 surgery as "cervical disc surgery." In his operative report, Dr. Yashon wrote: "I * * * explored the area for herniated disc and none was found." In his December 13, 1982 report, Dr. Yashon states "there was no herniated disc present." Under such circumstances, Dr. Lundeen incorrectly identified the type of surgery that he included in his WPI calculation.
 {¶ 40} Given the above analysis, the magistrate concludes that Dr. Lundeen's report cannot be relied upon by the commission to support its PTD award.
 {¶ 41} Because it is conceivable, based upon the remaining medical and vocational evidence of record after elimination of Dr. Lundeen's report, that the commission could yet find that claimant is PTD, this cause must be returned to the commission for additional consideration and an amended order. See Waddle, supra (distinguishing Waddle from State ex rel. LTVSteel Co. v. Indus. Comm. [1992], 65 Ohio St.3d 22).
 {¶ 42} The magistrate further observes that relator also contends that the commission abused its discretion by considering claim number 74855-22 which is allowed for "sprain left ankle." According to relator, that claim statutorily expired under R.C. 4123.52's ten-year statute of limitations on April 12, 2000, because allegedly the last medical benefit paid for treatment in the claim occurred on April 11, 1990.
 {¶ 43} The commission cannot have abused its discretion in considering claim number 74855-22 if relator has never moved the commission to declare the claim to be an expired claim under R.C. 4123.52. There is no evidence in the record here indicating that the commission has ever been asked to administratively adjudicate the continuing viability of the claim. This court has no authority to adjudicate this matter in the first instance. Accordingly, the continuing viability of industrial claim 74855-22 is not at issue in this action.
 {¶ 44} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO's order of January 14, 2003, awarding claimant PTD compensation, and, after eliminating Dr. Lundeen's report from further evidentiary consideration, enter a new order that adjudicates the PTD application.
 /s/ Kenneth W. Macke
 KENNETH W. MacKE
 MAGISTRATE