DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Louise N. Bryson, has filed this original action in mandamus seeking a writ ordering the Industrial Commission of Ohio to vacate its order denying her application for permanent total disability compensation and to enter a new order granting said compensation, or, in the alternative, to give further consideration to her application, excluding consideration of a defective vocational report and issuing a decision in compliance with State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm.
(1987), 31 Ohio St.3d 167.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate determined that the vocational report upon which the Commission relied was fatally flawed and could not constitute "some evidence" on which the Commission could rely. The magistrate determined that this court should issue a limited writ returning the matter to the Commission for further consideration of the application excluding consideration of the challenged vocational report and complying with Noll and Stephenson, and other applicable authorities.
 {¶ 3} Relator filed objections to the decision of the magistrate, agreeing that the vocational report could not be relied upon, but arguing that a remand to the Commission was not warranted and that this court should issue a full writ granting the requested compensation pursuant to State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. Respondent-commission responded to the objections urging this court to adopt the decision of the magistrate. Although Gay, at 323, does authorize the court to order a full writ of mandamus "where the facts of the case indicate that there is a substantial likelihood that a claimant is permanently and totally disabled," we do not find that the record before us is so certain as to warrant such action. Accordingly, the objections are overruled.
 {¶ 4} Following an independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Therefore, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, we issue a limited writ returning this matter to the Commission for further consideration of relator's application for permanent total disability compensation excluding consideration of the Mosely vocational opinion and complying withNoll, Stephenson, and other applicable authorities.
Objections overruled; writ granted.
Bryant and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Louise N. Bryson, : Relator, : v. : No. 03AP-650 GAC Merchandising, Inc. and : (REGULAR CALENDAR) The Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on December 24, 2003 Mark R. Naegel, for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In this original action in mandamus, relator, Louise N. Bryson, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") and to issue an order granting PTD compensation, or, in the alternative, to give further consideration to the PTD application, excluding consideration of a defective vocational report and issuing a decision in compliance with State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Findings of Fact:
 {¶ 6} 1. In July 1971, Louise N. Bryson ("claimant") sustained an industrial injury, and her workers' compensation claim was allowed for "severe sprain right wrist, carpal tunnel syndrome of the right wrist, reflex sympathetic dystrophy and arthritis of the right wrist" as well as "mild anxiety and mild depression."
 {¶ 7} 2. Claimant is right hand dominant.
 {¶ 8} 3. In August 1996, Irvin Warth, M.D., reported that claimant had continued pain in her right shoulder, right elbow, and right wrist, with marked weakness. Movement of the shoulder and elbow was limited. He concluded that claimant essentially "has no function of the right arm."
 {¶ 9} 4. In March 2000, Juan C. Meija, M.D., reoprted that, due to swelling, loss of ability to grip, loss of feeling and touch, pain radiating to the right shoulder, wrist, and hand, claimant had lost the use of her dominant right upper extremity. He opined that the right upper extremity served only as a gross assistive device and that claimant could not perform any sustained remunerative activity.
 {¶ 10} 5. In June 2003, claimant filed a PTD application, indicating among other things that she had once worked as a waitress.
 {¶ 11} 6. In January 2003, claimant was examined by Steven S. Wunder, M.D., who found that shoulder motion was limited, but that the limitation was "not due to a joint contracture but to voluntary guarding." He found good flexion of the elbow. Although claimant would not extend the elbow during formal examination, she did extend it to a nearly normal position when Dr. Wunder observed her indirectly. Dr. Wunder stated that claimant "would not actively move the right wrist" any further than ten degrees in any plane. He could not determine motor strength in the right arm, and claimant refused to try the grip meter on her right side.
 {¶ 12} Dr. Wunder concluded that claimant has sustained a 58 percent loss of use of the right upper extremity, which corresponded to a 38 percent impairment of the whole person. He concluded that claimant would have to use her left upper extremity "for most physical activities." On the accompanying checklist form, Dr. Wunder indicated that claimant could perform work activities in the category of "light work."
 {¶ 13} 7. Claimant was examined in regard to her allowed psychological conditions by Jennifer J. Stoeckel, Ph.D., and vocational assessments were filed by William T. Cody and Robert A. Mosley.
 {¶ 14} 8. In his report on behalf of the commission, Mr. Mosley described the restrictions imposed by each examiner and then listed job options based on each medical opinion. With respect to Dr. Wunder's report, Mr. Mosley stated as follows: "Able to perform light work activities." For job options, he listed "Waitress" as well as assembler of semi-conductors, testing machine operator, spring tester, and other jobs.
 {¶ 15} 9. In April 2003, the PTD application was heard. The hearing officer adopted the medical restrictions set forth by Drs. Stoeckel and Wunder, noting that Dr. Wunder limited claimant to using "the left upper extremity for most physical activities" but otherwise found she could perform light work.
 {¶ 16} With regard to the nonmedical/vocational factors, the commission provided the following analysis:
The Staff Hearing Officer finds that the injured worker is a middle aged individual of 57 years of age with an eighth grade education. The Staff Hearing [O]fficer finds that the injured worker has worked as a warehouse worker, inspector of toys and as a waitress.
Mr. Robert Mosley, vocational expert for the Industrial Commission opined in a report dated 03/17/2003 that injured worker's education should be adequate to meet basic demands of entry level occupations. Mr. Mosley opined that based on injured worker's work history in unskilled and semi-skilled work she should be able to meet the basic demands of entry level occupations. Mr. Mosley further opined that injured worker currently possesses academic or other skills required to perform entry level sedentary or light jobs. Mr. Mosley opined that injured worker demonstrated the following temperaments in her work history: dealing with people, making decisions and judgements, performing repetitive work and attaining precise set limits/tolerances.
Mr. Mosley opined, when accepting the residual functional capacities of Dr. Stoeckel and Dr. Wunder, that the injured worker has various employment options including inspector electronic, assembler semi-conductor, quality control in-spector and testing machine operator.
The Staff Hearing Officer finds that injured worker's age of 57 does not preclude training for some other employment. The Staff Hearing Officer finds that the training may include on-the-job instruction that requires only a few weeks. The Staff Hearing Officer finds that it is well established that there is no age at which a worker must be deemed to learn a new job. State ex.rel Moss v. I.C. (1996) 75 Ohio St. 3d 139.
Therefore, based upon the above enumerated orthopedic and psychological capabilities and the non-medical disability factors, the Staff Hearing Officer finds that the injured worker is capable of performing sustained remunerative employ-ment.
Accordingly, the injured worker's Application for Permanent Total Disability Compensation is denied.
All medical reports and vocational reports on file were considered.
This order is based on reports of Dr. Wunder, Dr. Stoeckel and Mr. Mosley.
Conclusions of Law:
 {¶ 17} In this original action, the claimant contends that the commission's order denying PTD constitutes an abuse of discretion. The magistrate agrees, concluding that the report of Mr. Mosley cannot constitute "some evidence" on which the commission may rely.
 {¶ 18} In describing the medical restrictions imposed by Dr. Wunder, Mr. Mosley stated only that claimant was limited to "light work." He completely omitted any mention of Dr. Wunder's conclusion that claimant had lost 58 percent of the function of the dominant upper extremity and that claimant would have to do "most" physical activities with her non-dominant hand While the magistrate acknowledges that a vocational evaluator need not provide an exhaustive description of medical restrictions, Mr. Mosley in this report omitted a crucial restriction imposed by Dr. Wunder — that he found claimant had little use of her dominant hand and arm.
 {¶ 19} If there were any doubt that Mr. Mosley failed to consider this crucial restriction imposed by Dr. Wunder, that doubt would be eliminated by reviewing the list of jobs that Mr. Mosley said claimant could perform, including the work of a waitress and assembler. Anyone who has ever been a waitress or seen waitresses at work knows that a waitress ordinarily needs good strength and dexterity of both upper extremities. Mr. Mosley's opinion, based on his flawed understanding of Dr. Wunder's report and omission of a crucial item of foundational information, must be removed from evidentiary consideration.
 {¶ 20} The magistrate recognizes that the commission wisely omitted from its findings regarding job options, the option of returning to waitress work. However, the magistrate concludes that the other findings as to job options, based on Mr. Mosley's report are also unreliable. Given the defective foundation of Mr. Mosley's opinion, none of his conclusions regarding job options based on Dr. Wunder's report are reliable. For example, the options of assembler and tester are highly questionable in that each tends to be work that requires repetitive motion of the hands, and Mr. Mosley showed no awareness of any restrictions for the dominant hand It is not for the court to perform a vocational review of each of the other listed options to determine whether a person with little use of the dominant hand might perform them.
 {¶ 21} A writ of mandamus should be issued. The magistrate rejects the argument, however, that a full writ is warranted. Claimant relies on policies adopted by the federal Social Security Administration, but the commission is not required to follow federal disability guidelines.
 {¶ 22} A limited writ returning this matter to the commission for further proceedings is appropriate. The commission must vacate its PTD denial and give further consideration to the application without consideration of Mr. Mosley's opinion. As to whether the commission should obtain an amended report from Mr. Mosley, obtain a new report from another vocational expert, or serve as its own vocational expert under the authority of decisions such as State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, may be left to the sound discretion of the commission.
 {¶ 23} The remaining arguments relating to the commission's overall assessment of the vocational factors need not be addressed at this time, as most of the commission's vocational analysis was based on Mr. Mosley's vocational report, which was materially flawed. However, the magistrate notes that the commission has broad discretion as the finder of fact to determine the negative, positive, or neutral effects of a claimant's age, work history, and education. See, e.g., State exrel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139; State exrel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414; State exrel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354; State exrel. King v. Trimble (1996), 77 Ohio St.3d 58.
 {¶ 24} Based on the foregoing, the magistrate recommends that the court grant a limited writ, returning this matter to the commission to vacate its order and to give further consideration to the PTD application, excluding consideration of Mr. Mosley's opinion and complying with Noll, Stephenson, and other applicable authorities.
 /s/ P.A. Davidson
P.A. DAVIDSON MAGISTRATE