DECISION
{¶ 1} Relator, Christina L. Alley-Yazell, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying relator's application for permanent total disability compensation and to find relator is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate determined that the report of Dr. Welsh constitutes some evidence on which the commission could rely to determine that relator physically was capable of some sustained remunerative employment at a sedentary work level. Similarly, the magistrate concluded the report of Dr. Murphy constitutes some evidence on which the commission could rely to determine relator psychologically was capable of some sustained remunerative employment. The magistrate further determined the vocational evidence supports the commission's conclusion, even though the only vocational report, that of Dr. Cody, concluded relator was permanently and totally disabled. Accordingly, the magistrate concluded the record contains sufficient evidence to support the commission's determination that relator is capable of sustained remunerative employment at the sedentary level.
 {¶ 3} Relator filed an objection to the magistrate's conclusions of law, contending "the Magistrate erred in finding that Relator's education was a neutral asset, thereby sustaining the Decision of the Industrial Commission of Ohio through its Staff Hearing Officer." (Objection, at 1.) Relator contends she is illiterate, premised in part on evidence that the Social Security Administration determined her to be illiterate. She asserts the commission likewise is required to find she is illiterate.
 {¶ 4} As the magistrate properly concluded, the Social Security Administration's determination is not binding on the commission. Rather, the issue is whether the evidence before the commission contains "some evidence" on which the commission could rely to determine relator's educational background is a neutral factor in assessing whether relator is capable of sustained remunerative employment.
 {¶ 5} Relator contends she is illiterate, rendering her education a negative factor. The evidence, however, reflects that relator graduated from high school and received average grades. She further attended additional educational classes through her involvement with vocational rehabilitation programs. Evaluators determined relator had strengths in visual sequential memory; later tests indicated she read at the level of a first grader in the seventh month of school. Without question, relator's ability to function is not commensurate with the level of her schooling. The magistrate nonetheless appropriately concluded relator does not fit the definition of illiteracy as provided in Ohio Adm. Code4121-3-34(B)(3)(b)(i), especially in view of her application for permanent total disability compensation that indicated she could read, write and perform basic math, though not well. While relator apparently indicated at the hearing before the commission's staff hearing officer that she was illiterate and could not read, write or perform basic math, the commission ultimately determined the evidence was conflicting and that her education is a neutral factor. Given the evidence presented, we cannot conclude the commission abused its discretion. Relator's objection is overruled.
 {¶ 6} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objection overruled; writ denied.
Brown and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Christina L. Alley-Yazell, :
Relator, :
v. No. 05AP-1107 :
Trim Systems, Inc. and Industrial Commission of Ohio, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on May 22, 2006 William D. Snyder Associates, and Greg Claycomb;Butkovich, Crosthwaite Gast, and Stephen P. Gast, for relator.
Jim Petro, Attorney General, and Eric J. Tarbox, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} Relator, Christina L. Alley-Yazell, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that relator is entitled to that compensation.
Findings of Fact:
 {¶ 8} 1. Relator sustained a work-related injury on September 24, 1998, and her claim has been allowed for "sprain lumbar region, herniated disc L5-S1, depression, chronic pain syndrome of the low back."
 {¶ 9} 2. Relator was 24 years old on the date of her injury and has not worked since that time. Relator filed her application for PTD compensation in January 2005, at which time she was 30 years old.
 {¶ 10} 3. Relator submitted the report of her treating physician, Dr. Walter G. Broadnax, Jr., in support of her application for PTD compensation. Dr. Broadnax noted that relator had undergone a laminectomy and discectomy at L5-S1 in July 2001 and concluded that relator was permanently and totally disabled from all forms of sustained remunerative employment due to her allowed physical conditions.
 {¶ 11} 4. Relator was examined by Dr. Terrence B. Welsh who issued a report dated March 3, 2005. Dr. Welsh noted that relator was 74 and one-half inches tall and weighed over 300 pounds and that her chief complaint was of low back and leg pain since 1998. Dr. Welsh noted that relator's gait appears normal, although slow. With regard to range-of-motion findings, Dr. Welsh noted 60 degrees of forward flexion actively in the standing position; five degrees of lumbar extension; and ten degrees of bilateral flexion. Ultimately, Dr. Welsh concluded that relator had reached maximum medical improvement ("MMI"), assessed a ten percent whole person impairment, and concluded that relator would be capable of performing some sedentary work activity.
 {¶ 12} 5. Relator was examined by Michael A. Murphy, Ph.D., for her allowed psychological conditions. In his March 20, 2005 report, Dr. Murphy opined that relator had reached MMI, assessed a 21 percent whole person impairment, and concluded that her allowed psychological conditions were not work-prohibitive. Specifically, he found that she could return to her former position of employment or perform other sustained remunerative employment for which she was otherwise physically capable and qualified.
 {¶ 13} 6. Two vocational evaluations were prepared by William T. Cody, one dated April 18, 2005 and the other May 27, 2005. Mr. Cody noted that relator had graduated from high school in 1992 and that, while there, she participated in special education programs. Mr. Cody performed various academic tests and concluded that relator's reading ability is below the level one would expect as a result of her high school education. He concluded that relator would not be able to function in jobs which required reading as she was functionally illiterate. Mr. Cody concluded that relator would be unable to adapt to any new kind of work activity due to her significant pain, manual work history, severely limited ability to read, her emotional restrictions, and her physical limitations. He concluded that relator would not be able to adapt to new tools, tasks, procedures and rules involved in performing a new type of work activity. Ultimately, Mr. Cody concluded that relator was permanently and totally disabled.
 {¶ 14} 7. There is evidence in the record that relator participated in some types of vocational rehabilitation. However, it is somewhat unclear why those programs were terminated except that the documents indicate medical reasons for terminating the programs.
 {¶ 15} 8. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on July 5, 2005. The SHO relied upon the medical reports of Drs. Welsh and Murphy. As such, the SHO found that relator could perform alternative sedentary employment. With regard to her nonmedical disability factors, the SHO concluded that relator's age of 31 years was a positive vocational asset in obtaining and performing alternative sedentary employment. Initially, the SHO found both relator's education and her prior work history to be positive vocational assets. However, in light of the contradictions in the record (relator graduated from high school yet cannot read), the SHO determined that her education and work history were neutral factors. The SHO discussed the vocational factors as follows:
Therefore, based on these reports, the Staff Hearing Officer will need to analyze the claimant's disability factors. Claimant's age is clearly a positive vocational asset in obtaining and performing alternative sedentary employment as she is currently but 31 years of age.
Additionally, claimant's education is found to be a positive vocational asset as she is a high school graduate. The Staff Hearing Officer notes that the claimant argued that she was in special education in high school, is virtually illiterate, as she can read, write and do basic mathematics, but none very well and that she tests in the lower ranges of abilities. While claimant's intellectual abilities may not be of the highest levels, the Staff Hearing Officer notes that the claimant's high school grade card reflects generally average grades ranging from A to D (8 As, 3 Bs, 6 Cs and 3 Ds). Further-more, claimant was able to graduate and attend additional educational classes via her involvement with vocational rehabilitation programs. At worst, the Staff Hearing Officer finds that the claimant's education would be rated a neutral asset, but certainly not a negative one.
Finally, claimant's prior employment is found to be a positive vocational asset as her past employment positions consisted of positions that ranged from unskilled to semi-skilled and from light to medium in their physical requirements. Additionally, she is found to have performed them without difficulties for approximately 10 years demonstrating good work habits as shown by her abilities to ask questions as necessary, follow instructions, report to work in a timely and business-like manner, interact appropriately with co-workers and supervisors, and most importantly, learn and comprehend new information in order to perform the basic job duties and functions. Again, claimant asserted that her prior employment did not provide her any transferable job skills to the sedentary level, so she is not qualified to perform alternative sedentary employment. The Staff Hearing Officer disagrees and finds that the claimant retains the ability to learn new skills via either short-term remediation or on the job training. Therefore, again, at worst, the Staff Hearing Officer would find the claimant's prior work experience to be a neutral vocational factor, but definitely not a negative one.
Lastly, the Staff Hearing Officer takes note of the fact that while the claimant has attempted several vocational rehabilitation programs, each has been discontinued for the stated reasons of medical instability. The Staff Hearing Officer takes note of the rule of law as found in the cases of Speelmanv. I.C. (1992), 73 Ohio App. 3d 757, B.F. Goodrich v. I.C.
(1995), 73 Ohio St. 3d 525, Bowling v. National Can Corp.
(1996), 77 Ohio St. 3d 148 and Wilson v. I.C. (1997),80 Ohio St. 3d 250, which requires an otherwise able claimant to make any or all reasonable attempts at vocational rehabilitation, retraining or further education which would enhance their ability to become re-employed. In this case, while the claimant has made several attempts, the Staff Hearing Officer cannot overlook the fact that she has not completed any of them. Combining this with her ex-tremely young age, the Staff Hearing Officer cannot say that further efforts in these areas would be futile or worthless.
Therefore, based on the above cited reports and reasoning, the Staff Hearing Officer finds that the claimant retains the physical, psychological and vocational abilities to perform alternative sedentary sustained remunerative employment and, therefore, she is found not to be permanently and totally disabled and her application is denied.
 {¶ 16} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 18} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 19} Relator contends that the commission's order denying her application for PTD compensation is not supported by some evidence and that the commission's analysis of the nonmedical vocational factors is seriously lacking in analysis. For the reasons that follow, this magistrate disagrees.
 {¶ 20} In the present case, the commission relied upon the March 3, 2005 report of Dr. Welsh to conclude that, from a physical standpoint, relator was capable of performing some sustained remunerative employment at a sedentary level. Although relator disagrees with Dr. Welsh's conclusion, relator does not assert any basis upon which Dr. Welsh's report is defective. Upon independent review of that report, the magistrate notes that it does constitute some evidence upon which the commission could rely in determining that relator was capable of some sustained remunerative employment at a sedentary work level. Furthermore, relator does not challenge the report of Dr. Murphy who concluded that, from a psychological standpoint, relator could perform her previous employment or other employment for which she was otherwise qualified. Therefore, with regard to the medical evidence, the magistrate finds that the commission's order is supported by some evidence that the relator can perform at a sedentary work level.
 {¶ 21} Relator also contends that the commission's order cannot survive scrutiny pursuant to Noll and its progeny. Specifically, relator contends that the commission rejected the only vocational evidence in the record, that being the reports of Dr. Cody. While acknowledging that the commission is not required to rely upon the vocational evidence presented and that the commission can determine the vocational issues itself, relator argues that the commission's determination and analysis in this regard is seriously flawed. Specifically, relator points out that she presented evidence that the Social Security Administration has found relator to be illiterate. As such, relator contends that the commission is required to also find that she is illiterate. Relator also points out that the Social Security Administration has found that she is disabled and qualifies for benefits. However, the commission is not, nor has it ever been, bound by determination from the Social Security Administration. The determination of the Social Security Administration is not binding on the commission.
 {¶ 22} Upon review of the commission's order, the magistrate finds that it meets the requirements of Noll and its progeny. Specifically, the commission found that relator's age of 31 years was a positive vocational factor. In determining that relator's education was a neutral asset, the commission noted that relator had graduated from high school and that she had received average grades in high school. Further, the commission noted that relator not only graduated, but attended additional educational classes via her involvement with the vocational rehabilitation programs. The hearing officer did note that relator indicated that she was illiterate, she could not read, write or perform basic math; however, the commission ultimately found the evidence to be somewhat conflicting and, as such, determined that her education was a neutral factor.
 {¶ 23} Counsel for relator asserted at oral argument that given the evidence that relator is essentially illiterate, the commission was required to find that her education was a negative factor. Counsel argued that the evidence in the record clearly demonstrates that relator is illiterate as defined in the Ohio Administrative Code. Ohio Adm. Code 4121-3-34(B)(3)(b)(i) provides:
"Illiteracy" is the inability to read or write. An injured worker is considered illiterate if the injured worker can not read or write a simple message, such as instructions or an inventory list, even though the person can sign his or her name.
 {¶ 24} A review of relator's school records does demonstrate significant weaknesses in verbal comprehension skills and reading difficulties were also noted. However, the evaluators found that relator had strengths relative to visual sequential memory (testing results from 1988). Later testing performed in 1991 indicated that relator read at the level of a first grader in the seventh month of school.
 {¶ 25} On her application for PTD compensation, relator indicated that she could read, write and perform basic math, although not well. While it is clear that relator's level of schooling clearly is not commensurate with her level of functioning, it does not appear that she is illiterate as defined in the Ohio Administrative Code.
 {¶ 26} Again, the commission noted that relator's educational level was not an accurate measure of her abilities. The magistrate rejects counsel's agreement that the commission was required to find both that she was illiterate and that her education was a negative factor.
 {¶ 27} The commission also found relator's prior work history to be a neutral factor. The commission noted that relator had worked for approximately ten years prior to her injury. This demonstrated good work habits, the ability to ask questions as necessary, follow instructions, report to work in a timely and businesslike manner, interact appropriately with co-workers and supervisors, and learn and comprehend new information in order to perform the basic job duties and functions. The hearing officer also found that relator retained the ability to learn new skills via either short-term remediation or on-the-job training. However, inasmuch as relator asserted that she did not have any transferable skills, the commission concluded that her prior work history was a neutral vocational factor.
 {¶ 28} Lastly, the commission determined that, especially in light of her young age, further vocational rehabilitation, retraining, or further education would enhance relator's ability to be reemployed.
 {¶ 29} Relator's argument that the commission should not have rejected the vocational report of Mr. Cody and that the commission is not qualified to make its own analysis of the nonmedical vocational factors without explaining why it is rejecting the only vocational evidence in the record is not supported by the law. The commission is permitted to substitute its own evaluation of vocational factors for opinions of other vocational experts. See State ex rel. Ewart v. Indus. Comm.
(1996), 76 Ohio St.3d 139; State ex rel. Singleton v. Indus.Comm. (1994), 71 Ohio St.3d 117, and State ex rel. Jackson v.Indus. Comm. (1997), 79 Ohio St.3d 266. Further, the commission is not required to explain why it rejects any reports, medical or vocational.
 {¶ 30} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and relator's request for a writ of mandamus should be denied.