DECISION IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE' S DECISION
{¶ 1} Relator, City of Lancaster ("relator"), commenced this original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting temporary total disability ("TTD") compensation to respondent George L. Bushee ("respondent").
 {¶ 2} Pursuant to Civ. R. 53 and Section (M), Loc. R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who considered the action and issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Relator asserted before the magistrate that the medical evidence supplied by Dr. Leak, upon which the commission relied, is contradictory and equivocal and cannot constitute "some evidence."
 {¶ 3} Relator pointed out that Dr. Leak opined, in the C-84's he submitted in the claim, that respondent had reached maximum medical improvement ("MMI"), but the doctor had earlier opined, on respondent's Social Security disability pension form, that respondent has a "condition of disability from which there is no present indication of recovery using the occupational characteristics developed by the U.S. Department of Labor for the positions of police officer — government service or fire fighter any industry." Relator argued that this statement conflicts with the later C-84's in which Dr. Leak opined that respondent has not reached MMI.
 {¶ 4} Both respondent and the commission argued that Dr. Leak has not issued contradictory or equivocal statements because his opinion expressed on respondent's disability pension form does not equate to a determination, for purposes of workers' compensation, that respondent had reached MMI with respect to his allowed conditions.
 {¶ 5} The magistrate observed that the record demonstrates that additional conditions were allowed in this claim after November 2004, and that Dr. Leak performed several different surgical procedures on respondent with some success. The magistrate determined that Dr. Leak's reports were not contradictory or equivocal because all of his reports submitted in respondent's workers' compensation claim indicate that respondent can and will continue to improve, provided that his case and medications are monitored closely, and that various available surgical procedures are considered. Finally, the magistrate noted, without citations, that this court has held that determinations relative to Social Security disability are not identical to disability determinations for the workers' compensation system and that the terms utilized by each are not synonymous. Therefore, the magistrate concluded that the commission did not abuse its discretion in finding that respondent had not reached MM I and was entitled to a continuing period of TTD compensation. The magistrate recommended that the court deny relator's request for a writ of mandamus.
 {¶ 6} In its objections, relator has simply reiterated its arguments made before the magistrate. Relator argues that Dr. Leak has issued contradictory or equivocal opinions on whether respondent has reached MM I, and that these opinions cannot constitute "some evidence" on which to base an award of TTD compensation. Relator does not object to the magistrate's findings of fact.
 {¶ 7} This court has recognized that the commission's guidelines for assessing disability are different from those of the Social Security Administration, and the commission is not required to follow the federal agency's guidelines. See State ex rel. Bryson v. GAC Merchandising,Inc., 10th Dist. No. 03AP-650, 2004-Ohio-3723, affirmed at 106 Ohio St.3d 40, 2005-Ohio-3556, 830 N.E.2d 1160, and State ex rel.Alley-Yazell v. Trim Systems, Inc., 10th Dist. No. 05AP-1107, 2006-Ohio-5775. On the record before us, we agree with the magistrate's conclusion that Dr. Leak's reports are not equivocal and the commission did not abuse its discretion in finding that respondent had not reached MMI. Accordingly, the objections are overruled.
 {¶ 8} Upon independent review of the findings of fact and conclusions of law, we find no error of law or other defect in the magistrate's decision. We adopt the decision as our own, including the findings of fact and conclusions of law therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ denied. FRENCH and McGRATH, JJ., concur.
 (APPENDIX A) IN MANDAMUS {¶ 9} Relator, City of Lancaster, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted temporary total disability ("TTD") compensation to respondent George L. Bushee ("claimant") on the grounds that claimant's treating physician indicated he had reached maximum medical improvement ("MMI") when he stated that relator will never return to his duties as a firefighter.
Findings of Fact:
 {¶ 10} 1. Claimant sustained a work-related injury on December 9, 2002, and his claim was originally allowed for the following conditions: "SPRAIN LUMBOSACRAL; SPRAIN LUMBAR REGION; L4-L5 DISPLACEMENT; L5-S1 DISPLACEMENT." Claimant's claim was eventually allowed for the following additional conditions: "AGGRAVATION OF PRE-EXISTING DDD DEGEN DISC DIS L4-L5, L3-L4, L5-S1, LUMBAR; HERNIATED DISC L3-L4."
 {¶ 11} 2. At the time of his injury, claimant was a firefighter for relator. Further, claimant has not been able to return to his former position of employment as a firefighter since the date of injury.
 {¶ 12} 3. Following the injury, claimant received a combination of TTD and working wage loss compensation.
 {¶ 13} 4. On April 15, 2004, relator offered claimant a light-duty position as a Human Resources Assistant.
 {¶ 14} 5. By letter dated November 15, 2004, claimant informed relator that he would not be able to continue his career as a firefighter based upon the advice of his physician, Dr. David Leak. Claimant attached to that letter a portion of the disability pension forms which Dr. Leak had filled out in November 2004. Pursuant to those forms, Dr. Leak indicated that claimant had been under his care since February 2003, and that claimant has a "condition of disability from which there is no present indication of recovery using the occupational characteristics developed by the U.S. Department of Labor for the positions of police officer — government service or fire fighter any industry." Dr. Leak also checked another box which indicated that claimant has a "condition of disability from which there is no present indication of recovery."
 {¶ 15} 6. Thereafter, by letter dated January 24, 2005, relator informed claimant that it did not have any light-duty positions available and that it could not accommodate Dr. Leak's medical restrictions.
 {¶ 16} 7. On February 1, 2005, claimant filed a C-84 requesting the payment of TTD compensation beginning January 20, 2005. On that form, Dr. Leak noted that there was a pending request for treatment and he provided an estimated return-to-work date of April 20, 2005.
 {¶ 17} 8. The record also contains Dr. Leak's January 20, 2005 treatment record wherein Dr. Leak noted that claimant complained of fatigue, diarrhea, headache, and numbness of his anterior thigh, lower leg, foot, and left leg.
 {¶ 18} 9. The record also contains the February 11, 2005 records review of Dr. Babatunde Onamusi, who stated that claimant had been released to return to work, with restrictions, by Dr. Leak, as of August 5, 2004. Dr. Onamusi indicated there was no evidence of a change of circumstances between August 5, 2004 and January 20, 2005, the date claimant was requesting TTD compensation.
 {¶ 19} 10. Dr. Leak completed another C-84 dated March 15, 2005, continuing claimant's period of TTD to an estimated return-to-work date of June 1, 2005.
 {¶ 20} 11. The record also contains Dr. Leak's March 15, 2005 treatment notes which indicate that the Ohio Bureau of Workers' Compensation ("BWC") had granted authorization for treatment of claimant's discs. Further, Dr. Leak noted that he was going to request an extension of the authorization to perform a diskectomy with intra-nuclear decompression and extraction and ablative thermal lesioning. Dr. Leak noted that a diskogram taken August 18, 2004 showed problems at L4-5, L5-S1.
 {¶ 21} 12. Claimant's request for TTD compensation was heard before a district hearing officer ("DHO") on March 21, 2005. As of that date, claimant's claim had not yet been allowed for the additional conditions noted in Finding of Fact No. 1. The DHO determined that TTD compensation was appropriate beginning January 20 through March 1, 2005, and continuing based upon the C-84 of Dr. Leak. The DHO noted further in the order as follows:
 The District Hearing Officer finds that the injured worker returned to light duty work in April of 2004 due to claim-related restrictions. Per the 01/24/2005 letter from the Safety-Service Director, Lindel R. Jackson, the city was unable to continue to provide light duty work. The injured worker has not been found to have reached maximum medical improvement. Furthermore, the injured worker is awaiting scheduling of lumbar surgery. Given the above, the District Hearing Officer concludes that the injured worker is entitled to temporary total disability compensation.
 {¶ 22} 13. Relator's appeal was heard before a staff hearing officer ("SHO") on April 19, 2005, and resulted in an order affirming the prior DHO order as follows:
 In affirming the District Hearing Officer's decision to grant the payment of temporary total compensation from 01/20/2005 through 03/21/2005, inclusive, and to continue upon submission of appropriate proof, this Staff Hearing Officer has relied upon the C-84's of Dr. Leak whereon Dr. Leak indicates the injured worker has not yet reached maximum medical improvement, and the 03/23/2005 report of Dr. Leak wherein Dr. Leak addresses the injured worker's need of further treatment.
 {¶ 23} 14. Relator's further appeal was refused by order of the commission dated May 10, 2005. Thereafter Dr. Leak competed another C-84 on June 14, 2005, extending claimant's disability through December 1, 2005.
 {¶ 24} 15. On June 1, 2005, the BWC authorized the treatment/diagnostic testing which had been requested by the claimant, granted TTD compensation to claimant, and determined that claimant's claim should be additionally allowed for certain degenerative disc conditions and herniated disc as noted in Finding of Fact No. 1.
 {¶ 25} 16. A chart review of claimant's record was performed by Dr. Fushil M. Sethi on June 17, 2005. Dr. Sethi was asked his opinion as to whether claimant had suffered degenerative disc disease at the L3-4, L4-5 and L5-S1 levels and whether claimant had a herniated disc at L3-4, and, if so, whether that herniated disc was caused by the December 9, 2002 injury. Dr. Sethi responded as follows:
 * * * Although Mr. Bushee has degenerative disease at L3-4, L4-5 and L5-S1, this disease is neither caused by nor aggravated by the mechanism of injury described by way of causation, aggravation or flow-through. * * *
 * * *
 * * * The x-rays of the claimant had suggested the possibility of herniated disc at L3-4 but is not causally related, as there are no comparative x-rays to show the claimant suffered any such condition by way of causation, aggravation or flow-through.
 {¶ 26} 17. Dr. Leak submitted additional reports dated August 4 and August 10, 2005, for the commission to consider. In his August 10, 2005 letter, Dr. Leak explained why claimant's claims should be additionally allowed for the degenerative disc disease at L3-4, L4-5, and L5-S1, as well as the herniated disc at L3-4. Dr. Leak identified the results of several MRI's, as well as a bone scan which had been performed on March 28, 2003 and a Lumbar Selective Nerve Root Chemoncurolysis which had been performed July 21, 2003. Dr. Leak concluded that, in his professional opinion, the herniated disc at L3-4 as well as the degenerative disc disease is directly related to claimant's industrial injury which occurred on December 9, 2002. (Dr. Leak's report can be found at pages 46-50 of the record.)
 {¶ 27} 18. Relator's appeals from the orders of the BWC additionally allowing claimant's claim, authorizing treatment, and granting a period of TTD compensation was heard before a DHO on July 13, 2005, and resulted in an order affirming two of the orders and vacating the third. The DHO concluded that claimant's claim should be additionally allowed as requested, authorized the decompression and thermal lesioning at L4-5 and ordered TTD compensation paid for a closed period of November 29, 2004 through January 19, 2005.
 {¶ 28} 19. Relator's appeal was heard before an SHO on August 16, 2005, and resulted in an order affirming the prior DHO order in all respects. The SHO also considered relator's argument that Dr. Leak had previously indicated that claimant had reached MMI and resolved that issue as follows:
 The Staff Hearing Officer considered the employer's argument at hearing that a prior report of Dr. Leak dated 11/09/2004, a form used by the U.S. Department of Labor, supports that the injured worker is not temporarily incapacitated from employment. However, the Staff Hearing Officer was not persuaded that Dr. Leak[']s opinion was equivocal because this report was used for a different type of physical evaluation. Moreover, the injured worker had already been paid temporary total disability beyond that at issue today from 11/29/2004 through 01/19/2005. The Staff Hearing Officer considered the cases presented for hearing of Eberhardt and of Adams v. Teledyne in rendering this decision.
 {¶ 29} 20. Relator's appeal was refused by order of the commission mailed September 10, 2005.
 {¶ 30} 21. Claimant was examined by Dr. Ron M. Koppenhoefer at the request of the BWC. In his September 15, 2005 report, Dr. Koppenhoefer opined as follows:
 Based on my examination and review of the medical records, I believe Mr. Bushee has reached maximum medical improvement for conservative treatment. Conservative treatment would also include procedures which would not be surgical decompression i.e. by a orthopaedic/neurosurgeon or a surgical fusion. Any type of local procedure for disc I don't believe would improve his functional state. * * *
 * * *
 * * * Vocational rehabilitation would be appropriate. The only alternative treatment would be a[n] evaluation by a spinal surgeon to see if he is a candidate for a laminectomy/fusion procedure.
 * * *
 He is unable to return to his former position of employment at this time. His functional limitations pertain to bending, stooping and lifting activities. Sitting should be able to change his position at will.
 * * *
 I believe he has reached maximum medical improvement unless he undergoes extensive surgical treatment.
 {¶ 31} 22. Dr. Koppenhoefer authored an addendum dated September 22, 2005, after being informed that claimant's claim had been additionally allowed for lumbar/lumborsacral disc degeneration L3-4, L4-5, L5-S1, and herniated disc L3-4. Taking these conditions into account, Dr. Koppenhoefer was still of the opinion that claimant had reached MMI for conservative care and that the only treatment which would be available to claimant which was not conservative would be to have a lumbar fusion.
 {¶ 32} 23. On October 5, 2005, claimant's request for "Spondylotomy Endoscopic Decompression with Thermal Lesioning at L4/5 and L5/S; Preadmission Testing PAT labs, Chest x-ray and EKG" was authorized by relator.
 {¶ 33} 24. Dr. Leak authored a report dated October 11, 2005 in response to Dr. Koppenhoefer's report explaining why Dr. Leak did not believe that claimant was at MMI. Dr. Leak stated as follows:
 The claimant has not reached maximal medical improvement. The claimant has the possibility of significant physiologic and functional improvement. As a consequence, the patient could decrease their medication consumption, decrease their office visits, decrease medically indicated therapeutic monitoring. The patient's quality of life will increase and the cost of care will decrease significantly.
 We are willing to speak with involved parties, answer questions, and give data about the patient[']s care should the aforementioned documentation not appear in records required for consideration of the authorizations being requested on behalf of this claimant.
 Plans: We will schedule Spondylotomy Endoscopic Decompression with Thermal Lesioning at L4/5 and L5/S1. We will schedule PAT Labs, Chest X-Ray, and EKG for Spondylotomy Endoscopic Decompression with Thermal Lesioning at L4/5 and L5/S1.
 {¶ 34} 25. Dr. Leak submitted a report dated October 12, 2005, discussing the following procedure which was performed on claimant: "Sacral Spondylotomy with Arthrodesis." Thereafter, in a report dated October 24, 2005, Dr. Leak noted that claimant informed him that the recent procedure was somewhat helpful, and claimant estimated he got a 30 percent relief from his pain but that he was still having a great deal of trouble with bending and doing dishes, laundry, etc. Dr. Leak noted that if claimant's pain does not continue to improve then he would perform a diskectomy at L4-5 and L5-S1 with decompression and coblation.
 {¶ 35} 26. The BWC's request to terminate claimant's TTD compensation on the basis that he had reached MM I as expressed by Dr. Koppenhoefer, was heard before a DHO on October 24, 2005, and was granted. As such, the DHO based its decision to find that claimant had reached MM I upon the September 9 and September 22, 2005 reports of Dr. Koppenhoefer. As such, the DHO concluded that TTD compensation should be terminated as of October 24, 2005.
 {¶ 36} 27. Dr. Leak submitted reports dated November 17 and December 5, 2005, wherein Dr. Leak specifically noted that claimant reported a 30 percent relief in pain following the October 12, 2005 procedure but that claimant continues to have difficulty performing everyday tasks. Dr. Leak concluded as follows:
 In conclusion the patient continues to have difficultly performing activities of daily living, therefore it would be impossible for the patient to return to work at this time without worsening his condition. It is my opinion that after monitoring the patient we will decide on the best course of action (diskectory [sic] or Voc Rehab). After the patient has been properly treated we will reevaluate his ability to return to work. At this time the patient is not able to return to work as definitive treatment has not been allowed.
 {¶ 37} 28. Dr. Leak also completed a C-84 dated November 28, 2005, certifying claimant as temporarily totally disabled through March 1, 2006, and indicated that additional treatment was pending.
 {¶ 38} 29. Claimant's appeal from the DHO order of October 24, 2005 finding that he had reached MMI and terminated TTD compensation was heard before an SHO on December 6, 2005. The SHO vacated the prior DHO order in its entirety and denied the motion of the BWC to terminate claimant's TTD compensation. The SHO stated as follows in that order:
 It is found that there are a number of low back conditions allowed in this claim. Proof on file shows that the injured worker is continuing to undergo a range of procedures being put forth and suggested by Dr. Leak. The reports of Dr. Koppenhoefer and of Dr. Leak have been considered, but giving the injured worker the benefit of the doubt at this point, the reports of Dr. Leak are found more persuasive.
 It is therefore found that the injured worker has not yet reached a level of maximum medical improvement concerning the allowed conditions, and that his condition does in fact remain temporarily and total in nature. Payment of temporary total compensation is awarded from the date of last payment through 02/28/2006, and to continue upon submission of supporting medical evidence. This payment is supported by the C-84 form signed by Dr. Leak on 11/28/2005.
 {¶ 39} 30. Relator's further appeal was refused by order of the commission mailed December 31, 2005.
 {¶ 40} 31. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 41} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 42} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 43} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 44} In this mandamus action, relator makes one argument: The medical evidence upon which the commission relied is contradictory and equivocal and cannot constitute "some evidence." Relator asserts that claimant had reached MMI as of November 15, 2004, when Dr. Leak indicated on claimant's pension form that claimant has a "condition of disability from which there is no present indication of recovery using the occupational characteristics developed by the U.S. Department of Labor for the positions of police officer — government service or fire fighter any industry." As such, relator argues that Dr. Leak's C-84s certifying periods of TTD are contradictory and cannot be relied upon. Relator asserts that the evidence shows that claimant is and has been at MM I and argues that the other doctors who have also issued reports regarding claimant's conditions have also indicated that claimant had reached MMI.
 {¶ 45} Claimant and the commission both argue that Dr. Leak has not issued contradictory or equivocal statements because his statement relative to claimant's pension form that claimant had a permanent condition does not equate with a determination that claimant had reached MMI. Both argue that the definitions of terms relative to workers' compensation law and various pension and/or Social Security disability forms are not synonymous. As such, both claimant and the commission argue that Dr. Leak's checking of boxes on claimant's pension form indicating that he qualified for a disability pension is not synonymous with an assertion that it was Dr. Leak's opinion that claimant had reached MMI as such is defined in the Ohio Administrative Code.
 {¶ 46} It is undisputed that contradictory or equivocal statements by the same physician cannot, as a matter of law, support an award of compensation. See State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to qualify an ambiguous statement. State ex rel. Chrysler Corp. v. Indus.Comm. (1998), 81 Ohio St.3d 158.
 {¶ 47} In the present case, all of the reports submitted by Dr. Leak relative to his workers' compensation claim indicate that, in his opinion, claimant can and will continue to improve provided that his case is followed closely, his medications are monitored closely, and that, as doctors, they perform various surgical procedures on claimant. Even though the disability forms had been submitted in November 2004, the record is clear that claimant had additional conditions allowed in his claim after that date and further that Dr. Leak performed several different surgical procedures on claimant. Furthermore, as Dr. Leak noted, claimant had indicated that he felt relief from these procedures. Specifically, following the October 12, 2005 endoscope decompression of the nerve roots at L4-5 and L5-S1, claimant indicated that he had a 30 percent relief of his pain from this procedure. In his October 24, 2004 report, Dr. Leak noted that if claimant's pain does not continue to improve, he would proceed with a diskectomy at L4-5 and L5-S1 with decompression in coblation. Dr. Leak noted that, if claimant continued with pain thereafter, the next step would be neuromodulation.
 {¶ 48} On several occasions in the past, parties have argued in this court that evidence that a claimant is receiving Social Security disability benefits establishes that they are entitled to permanent total disability compensation. Without citing to the specific cases, this court has consistently stated that the determinations relative to Social Security disability are not identical to those for the workers' compensation system and that the terms used are not synonymous. Likewise, whether or not one qualifies for a disability pension and/or also qualifies for TTD compensation, are not determined by the same standard. With regard to disability pensions, a person can qualify if it appears that they will be unable to resume their former position of employment for one year. Furthermore, the fact that Dr. Leak indicated that there is no present indication of recovery using the standard of the United States Department of Labor, does not mean that Dr. Leak was of the opinion that, as defined in the Revised Code and the Ohio Administrative Code, the claimant was not temporarily and totally disabled. The term permanency is often used interchangeably with MMI; however, the term "permanency" appears in many contexts and it cannot be assumed that every time a doctor uses the term permanency in one context, that the doctor is denoting MMI in the workers' compensation context. See, for example, State ex rel. Miller v. Indus. Comm. (1994),71 Ohio St.3d 229.
 {¶ 49} Upon review of the record, the magistrate concludes that Dr. Leak has not authored equivocal or contradictory opinions relative to claimant's condition. With the exception of the document which Dr. Leak prepared relative to claimant's disability pension, all of the documentation which is in the record authored by Dr. Leak and submitted to the commission for consideration in claimant's workers' compensation case indicated that Dr. Leak is of the opinion that claimant's condition can continue to improve even if that improvement progresses slowly. Because the magistrate concludes that the context in which the disability pension form defines terms differs from the workers' compensation system, the magistrate concludes that the commission did not abuse its discretion in finding that claimant had not reached MMI and was entitled to a continuing period of TTD compensation.
 {¶ 50} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated the commission abused its discretion in finding that claimant had not reached MMI and in granting claimant TTD compensation and this court should deny relator's request for a writ of mandamus.