DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, American National Red Cross, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order granting permanent total disability compensation to respondent-claimant, Clinton L. Smith, and to find that claimant is not entitled to said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate concluded the commission did not abuse its discretion in relying on the medical reports of Drs. Gurley and Nemunaitis and in concluding the surveillance evidence did not demonstrate claimant's physical capacities are greater than what he reported and demonstrated to those doctors. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's conclusions of law regarding the reports of Drs. Gurley and Nemunaitis, largely rearguing those issues adequately addressed in the magistrate's decision. Although relator contends Dr. Gurley's report is not some evidence on which the staff hearing officer could rely, Dr. Gurley's report states that claimant is "permanently and totally disabled due to his residual signs and symptoms related to the specific workers' compensation injury dated February 18, 2000." (Stipulated Evidence, at 11.) Dr. Gurley's notation that claimant suffers from "chronic residual pain syndrome" does not require, as relator suggests, that the staff hearing officer conclude the doctor considered a non-allowed condition. (Stipulated Evidence, at 11.) The staff hearing officer properly could view Dr. Gurley's report as addressing a symptom caused by claimant's allowed condition, as Dr. Gurley specifically relates the pain to claimant's industrial injury.
 {¶ 4} Similarly, relator contends that Dr. Nemunaitis's report is not properly considered because it refers to "residual biomechanical problems that relate to [claimant's] lumbar spine." (Stipulated Evidence, at 18.) As the commission points out, however, Dr. Nemunaitis did not assess a percentage of impairment with respect to any non-allowed condition, but estimated a five percent whole person impairment arising from the allowed condition of contusion of the back, and a 35 percent impairment from the allowed cervical conditions. Moreover, in a report that specifically lists the allowed conditions, Dr. Nemunaitis stated that claimant is "not capable of physical work activity at any capacity as relates to allowed conditions." (Stipulated Evidence, at 19.) Accordingly, relator's objections are overruled.
 {¶ 5} Following an independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Brown, P.J., and McGrath, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. American :
National Red Cross, :
 Relator, :
v. : No. 05AP-66
Clinton L. Smith and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on June 24, 2005 Scott, Scriven Wahoff, LLP, and Timothy E. Cowans, for relator.
Karen S. Ireland-Phillips, for respondent Clinton L. Smith.
Jim Petro, Attorney General, and Shawn M. Wollam, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} Relator, American National Red Cross, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Clinton L. Smith ("claimant") and ordering the commission to find that claimant is not entitled to said compensation.
 Findings of Fact: {¶ 7} 1. Claimant sustained a work-related injury on February 18, 2000 and his claim has been allowed for:
Contusion of back; cervical spondylosis and C3-4 herniated disc; adjacent cervical disc degeneration C4-5, cervical disc herniation with myelopathy C5-6, cervical foraminal spinal stenosis C5-6, cervical foraminal spinal stenosis C6-7 and pseudo arthrosis (nonunion) of fusion C6-7.
Claimant has undergone three operations and his spine has been fused from the C3 to the C7 level.
 {¶ 8} 2. On September 5, 2003, claimant filed his application for PTD compensation. At the time, claimant was 47 years of age, had last worked in 2000, had completed the tenth grade and indicated that he could read and perform basic math, but that he could not write well, and indicated that his previous work history had been as an industrial power coder, landscaping and cleaning laborer, concession stand cook, punch-press operator, infantry man in the military, and mobile unit assistant.
 {¶ 9} 3. In support of his application for PTD compensation, claimant submitted two reports from his treating physician Jerold P. Gurley, M.D. In his December 30, 2002 report, Dr. Gurley stated as follows:
Mr. Smith continues to undergo treatment for the clinical cervical pathology outlined above. His condition and residual signs and symptoms are permanent in character as a result of his massive cervical disc herniation at the C3-4 level. It is my opinion, that as a result of this injury, and due to the severity of his residual clinical signs and symptoms, that he may ultimately become permanently and totally disabled. As for now, he is currently undergoing an ongoing treatment for surgical therapy which was performed on October 15, 2002.
At this time, Mr. Smith is specifically and unquestionably not maximally medically improved.
In his August 8, 2003 report, Dr. Gurley stated: * * * [I]t is my opinion that Mr. Clinton's [sic] Smith is permanently and totally disabled due to his residual signs and symptoms related to the specific workers compensation injury dated February 18, 2000.
* * * Mr. Smith suffers not only chronic residual pain syndrome but severe and functionally disabling residual neurological signs and symptoms resulting from his index injury and the associated spinal cord injury which was associated with this injury. His residual cervical myelopathy will, again within reasonable medical certainty, will not improve and has even been shown in the medical literature to possess potential for progression in spite of adequate surgical decompression and stabilization. This is a paramount consideration in determining the fact that his myelopathy leaves him with permanent functional limitations in the form of gait and motor disturbances and limitations as well as chronic pain.
With extensive experience in the field of management of spinal injuries in the workers compensation sector, it is my opinion, that within a reasonable degree of medical probability and certainty, Mr. Clinton's [sic] Smith has reached maximal medical improvement with severe residual and functionally disabling impairments which are permanent in character. * * * [H]e may experience progression of his residual neurological function. It is also my opinion that this disability arises out of work and is directly related to his index injury of February 18, 2000. It is also my opinion that a [sic] he would be unable to achieve or sustain or engage in any employment in the foreseeable future. It is my opinion that, within the classifications of the functional capacity evaluation, he would not even be able to function with in [sic] a sedentary classification.
 {¶ 10} 4. Claimant was examined by John G. Nemunaitis, M.D., on behalf of the commission. After providing all of his physical objective findings, Dr. Nemunaitis stated as follows:
The claimant does have residual biomechanical problems that relate to his lumbar spine but there were no objective findings to verify a radiculopathy as relates to the lumbar spine. He however, does have residual radiculopathy in both upper extremities primarily at C6-7-8 that do impair fine motor coordination and hand functioning. He also has problems with shoulder range of motion in part related to stiffness and, to a lesser extent, motor weakness. Although the claimant is not paraplegic and has minimal motor weakness in his lower extremities, he does have significant impairment in safety risk involved with ambulation because of his spasticity. His examination verified hyperactive reflexes in all four extremities and also a positive Babinski in the left lower extremity. He has a verified spinal cord injury and his reflexes reflect that. The claimant denies bowel and bladder dysfunction. The claimant is MMI. Although he does not have significant upper extremity weakness, he does have a residual radiculopathy associated with his cervical injury and surgeries. The claimant is not paraplegic nor can he be described as having severe long tract impairments however, he does have objective verification of spinal cord injury and residual spasticity in all four extremities which do increase his risk of falling, balance and mobility capabilities. It also has affected his upper extremity functioning both distal and proximal. * * *
Dr. Nemunaitis found that claimant had reached maximum medical improvement ("MMI"), assessed a 38 percent whole person impairment which included 35 percent impairment for claimant's allowed cervical conditions and a five percent impairment for his allowed contusion of back. Dr. Nemunaitis also opined that claimant was not capable of physical work activity.
 {¶ 11} 5. Claimant was also examined by Jack G. Jones, M.D., in July 2003. Dr. Jones' original report, if one exists, has not been made part of the record; however, Dr. Jones wrote two addendum reports, one on November 24, 2003 and another on March 15, 2004. In his November 24, 2003 addendum, Dr. Jones opined that claimant's allowed conditions had reached MMI and further opined that claimant was capable of performing sedentary work activities. Dr. Jones assessed a five percent whole person impairment for claimant's allowed lumbosacral condition and indicated that, when taken in combination with the other allowed conditions, claimant has a 21 percent whole person impairment.
 {¶ 12} In his March 15, 2004 addendum, Dr. Jones again opined that claimant was capable of sedentary work activities, assessed a 21 percent whole person impairment, and made the following statements relative to a surveillance video submitted by relator:
* * * It is evident from the surveillance video tapes that the patient can walk without the assistance of a cane with only a slightly antalgic gait (recall the patient had a 1992 right ankle surgery). It is also evident that the patient has much greater cervical spine range of motion than he demonstrated at the time of my examination. As suspected by inconsistencies during the time of my IME. The patient was observed walking forwards, as well as backwards, and reversing directions abruptly without any evidence of foot drop, tripping, stumbling of an unstable gait at anytime. The patient was observed raising his right arm and cane well above shoulder level without obvious difficulty or discomfort.
 {¶ 13} 6. A vocational assessment was prepared by Mark A. Anderson, dated January 24, 2004. Mr. Anderson indicated that claimant has no transferable skills to sedentary work, was not physically capable of performing his prior job, and had a number of nonexertional limitations including:
* * * [C]hronic constant pain in his neck and back which makes prolonged standing, sitting or walking difficult and painful. He relies on a cane to walk. He takes Oxycotin 3 times per day which makes him drowsy. Mr. Smith has also demonstrated poor manual dexterity abilities in regards to the Purdue Pegboard. His Math aptitude placed at the 3rd Grade Level while his Reading aptitude placed at the mid-4th Grade Level. His SRA Clerical aptitude placed below the 1st percentile.
Furthermore, Mr. Anderson indicated that claimant has demonstrated poor manual dexterity, no clerical aptitude, constant pain in the neck and back, an inability to stoop or bend, no transferable skills, difficulty with balancing, a limited ability to drive a car, and his reliance on medication to control pain and sleep, and concluded that claimant was capable of performing less than the full range of sedentary activities and that he was not employable in the local, state or national economies.
 {¶ 14} 7. An employability assessment was prepared by Bruce S. Growick, Ph.D. Based upon the reports of Drs. Gurley, Jones, and Nemunaitis, Dr. Growick concluded that claimant was not employable. Dr. Growick noted that claimant's age would not be a detriment to employment, that his limited education could make it difficult for him to learn new skills, and that he has a steady work history; however, with no discernable transferable work skills, Dr. Growick indicated that claimant should be capable of learning and performing entry-level jobs at the sedentary or light levels with a sit/stand option.
 {¶ 15} 8. On January 10, 2004, a staff hearing officer ("SHO") issued a tentative order granting claimant's application for PTD compensation based upon the December 8, 2003 report of Dr. Nemunaitis.
 {¶ 16} 9. Relator objected and the application was heard before an SHO on June 24, 2004. At that time, the SHO rendered a decision granting PTD compensation to claimant based upon the reports of Drs. Gurley and Nemunaitis. The SHO also reviewed the videotape surveillance evidence submitted by relator and stated as follows:
The Staff Hearing Officer has reviewed and considered the videotaped surveillance evidence shown at the hearing. Claimant in the video appeared to walk with an altered gait and at one time he stumbled. The Staff Hearing Officer finds that the surveillance evidence does not rise to the level of supporting the employer's contention that claimant somehow deceived the examining physicians as to the extent and nature of his residual functional capacities.
The SHO indicated that the beginning date of the award would be September 9, 2003, the day after the last payment of temporary total disability compensation.
 {¶ 17} 10. Relator's request for reconsideration was denied by order of the commission mailed July 28, 2004.
 {¶ 18} 11. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law: {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 20} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 21} Relator contends that the commission abused its discretion by relying upon the medical reports of Drs. Gurley and Nemunaitis, and that the surveillance evidence demonstrates that claimant's physical capacities are significantly greater than what he reported and demonstrated to Drs. Gurley and Nemunaitis. For the reasons that follow, the magistrate finds that relator's arguments lack merit.
 {¶ 22} Relator first challenges the August 8, 2003 report of Dr. Gurley and argues that Dr. Gurley used a functional capacity evaluation standard for sedentary work instead of the standard set out in Ohio Adm. Code 4121-3-34(B)(2)(a). Relator also contends that Dr. Gurley relied, at least in part, on the nonallowed condition of chronic pain syndrome.
 {¶ 23} Ohio Adm. Code 4121-3-34(B)(2)(a) defines sedentary work as follows:
(a) "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 24} In his August 8, 2003 report, Dr. Gurley made the following statements:
* * * [I]t is my opinion that Mr. Clinton's [sic] Smith is permanently and totally disabled[.] * * *
* * *
* * * It is my opinion that, within the classifications of the functional capacity evaluation, he would not even be able to function with in [sic] a sedentary classification.
 {¶ 25} Relator argues that nowhere in Dr. Gurley's report does he specifically define the "functional capacity evaluation." However, the magistrate notes that physical capacity evaluations are often completed by physicians on a form provided by the Ohio Bureau of Workers' Compensation. Those forms request that the doctor identify the physical work activity which the injured worker is capable of performing and includes the following categories: sedentary work, light work, medium work, heavy work, and very heavy work. Under each of those categories, the various physical work activities are defined in accordance with the Ohio Administrative Code. As such, even though Dr. Gurley did not attach a physical capacities evaluation, the magistrate finds that the forms are commonly attached by physicians and referred to by physicians and that there is no evidence in the record to indicate that Dr. Gurley did not understand the consequences of noting that claimant could not perform sedentary work. As such, relator's argument that Dr. Gurley's report should automatically be removed from evidence because he did not set out the physical requirements for sedentary work does not render his opinion unclear.
 {¶ 26} Furthermore, the magistrate rejects relator's argument that Dr. Gurley relied in part on nonallowed conditions. In his report, Dr. Gurley did note that claimant suffered from chronic residual pain syndrome. Relator contends that, pursuant to State ex rel. Waddle v.Indus. Comm. (1993), 67 Ohio St.3d 452, because Dr. Gurley considered nonallowed conditions, his report cannot constitute "some evidence" upon which the commission could rely. This magistrate disagrees.
 {¶ 27} Dr. Gurley had been treating claimant for a number of years. In his December 30, 2002 report, Dr. Gurley provided a surgical and treatment history relating to claimant's conditions. It is clear from his reports that he is well aware of the conditions allowed in claimant's claim. Furthermore, considering the medications which claimant is currently taking, his use of a TNS unit, and the cervical epidurals he has had, the record contains significant evidence that claimant has chronic pain relative to his allowed conditions. Chronic pain can be a "symptom" even if it is not recognized as a "condition." Nothing in Dr. Gurley's report indicates that he is opining that claimant's claim should be additionally allowed for "chronic pain syndrome" and, as such, the magistrate finds that relator's reliance on Waddle is misplaced.
 {¶ 28} Relator also contends that the report of Dr. Nemunaitis cannot constitute "some evidence" upon which the commission could rely. Relator points out that Dr. Nemunaitis assessed a five percent whole person impairment for claimant's allowed condition of contusion of back and points out that, in his report, Dr. Nemunaitis had stated that: "The claimant does have residual biomechanical problems that relate to his lumbar spine." Relator contends that pursuant to State ex rel. BordenChemical, Inc. v. Mourn, Franklin App. No. 03AP-1213, 2005-Ohio-1121, Dr. Nemunaitis' report must be removed from evidentiary consideration.
 {¶ 29} In Borden, this court found that the report of Dr. Lundeen, upon which the commission relied to grant PTD compensation, was flawed because Dr. Lundeen included the nonallowed cervical disc surgery in his calculation of whole person impairment. Dr. Lundeen had assessed a 60 percent whole person impairment for the cervical spine, of which nine percent of the impairment was specifically attributed to the cervical disc surgery with residual pain and rigidity. This court noted that nothing in the record showed that the 1982 surgery which Dr. Lundeen considered was causally related to the industrial injury.
 {¶ 30} The present case differs from Borden. In the present case, although Dr. Nemunaitis arguably referenced a nonallowed condition as part of his overall evaluation of claimant, he did not, as in Borden,
assess a percentage of impairment relative to any nonallowed condition. Relator points out that Dr. Nemunaitis assessed a five percent impairment relative to the allowed condition of contusion of back; however, as referenced in the findings of fact, Dr. Jones, who had examined claimant on behalf of relator, had himself assessed a five percent whole person impairment for the allowed condition relative to claimant's lumbosacral area. As such, the magistrate finds that Dr. Nemunaitis' report is not automatically flawed because he assessed a five percent impairment for the condition of back condition and it does not automatically demonstrate that he based his opinion, even in part, upon a nonallowed condition. Instead, Dr. Nemunaitis correctly listed the allowed conditions at the beginning of his report and determined, as did Dr. Jones, that claimant had a five percent impairment relative to his allowed lower back condition. As such, the magistrate finds that the commission did not abuse its discretion by relying upon the reports of Drs. Gurley and Nemunaitis.
 {¶ 31} Relator also contends that the surveillance evidence reveals that claimant's physical capacities are significantly greater than what he reported and demonstrated to Drs. Gurley and Nemunaitis. Relator asserts that only Dr. Jones received the video surveillance and that his opinion should be relied upon. The magistrate has reviewed the videotape surveillance and agrees with the conclusion reached by the SHO who found:
* * * Claimant in the video appeared to walk with an altered gait and at one time he stumbled. The Staff Hearing Officer finds that the surveillance evidence does not rise to the level of supporting the employer's contention that claimant somehow deceived the examining physicians as to the extent and nature of his residual functional capacities.
 {¶ 32} While the surveillance does show claimant walking, at times without his cane, gesturing with his arms, carrying a small bag, and turning his head, the magistrate concludes that this does not necessarily demonstrate that claimant deceived Drs. Gurley and Nemunaitis and that he could actually perform at a higher level. From the stipulation of evidence, it is clear that claimant takes some strong pain medication and for all one knows, at the time the surveillance videos were taken, claimant may have been experiencing a certain relief from his pain due to the medication. That does not necessarily render the reports of Drs. Gurley and Nemunaitis flawed relative to their conclusions that he cannot perform work activity. Again, the commission reviewed this evidence and concluded that it was not evidence that claimant could actually perform at a greater physical exertional level. Credibility and weight of evidence are for the commission to determine and, based upon a review of the record, this magistrate cannot say that the commission abused its discretion by finding that the surveillance evidence submitted by relator showed that claimant actually had greater abilities than he demonstrated and reported to Drs. Gurley and Nemunaitis. As such, this argument of relator fails as well.
 {¶ 33} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion in relying upon the medical reports of Drs. Gurley and Nemunaitis and that the commission did not abuse its discretion in awarding PTD compensation to claimant. As such, relator's request for a writ of mandamus should be denied.