OPINION
{¶ 1} Relator, Schottenstein Stores Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Haskell Hysell ("claimant"), and ordering the commission to deny said compensation. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision, including findings of fact and conclusions of law, which is appended to this opinion. Therein, the magistrate determined that the reports of Drs. T. M. Patel and William R.C. Stewart, III do constitute some evidence upon which the commission can and did rely. Therefore, the magistrate concluded the commission did not abuse its discretion in awarding PTD to claimant and consequently recommended that this court deny the requested writ of mandamus.
 {¶ 3} Relator has filed the following five objections to the magistrate's decision:
 1. The Magistrate erred by inserting his own explanations for the explanations that should have been provided by the doctors.
 2. The Magistrate failed to find that the Industrial Commission abused its discretion when it awarded permanent total disability compensation based on medical reports that failed to attribute Claimant's disability solely to the allowed conditions in the claim.
 3. The Magistrate failed to find that the Industrial Commission abused its discretion when it awarded permanent total disability compensation based upon medical reports that are internally inconsistent.
 4. The Magistrate failed to find that Dr. Patel's Physical Capacities form places Hysell in the sedentary work category.
 5. The Magistrate failed to find that Dr. Stewart's report is not "some evidence" because the report fails to set forth reasonably demonstrable objective findings as required by Ohio Admin. Code 4121-3-34(D).
 {¶ 4} Relator's objections contain in essence the same arguments made to and addressed by the magistrate, i.e., that both physicians considered non-allowed conditions, the reports are internally inconsistent, and the reports fail to explain the same. *Page 3 
For the reasons set forth in the magistrate's decision, however, we do not find relator's objections well-taken.
 {¶ 5} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
FRENCH, P.J., and TYACK, J., concur. *Page 4 
 APPENDIX MAGISTRATE'S DECISION Rendered January 21, 2009 IN MANDAMUS {¶ 6} In this original action, relator, Schottenstein Stores Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 5 
vacate its award of permanent total disability ("PTD") compensation to respondent Haskell Hysell ("claimant") and to enter an order denying said compensation.
Findings of Fact: {¶ 7} 1. On October 25, 1999, claimant sustained an industrial injury while employed as a sales associate for relator, a self-insured employer under Ohio's workers' compensation laws.
 {¶ 8} 2. The industrial claim (No. 99-590999) is allowed for "acute lumbosacral strain; herniated disc L4-5; aggravation of degenerative disc L4-5, L5-S1."
 {¶ 9} 3. According to the operative report of surgeon Won G. Song, M.D., on April 20, 2000, claimant underwent a "[l]umbar laminotomy L4-5 left with excision of disk with foraminotomy with decompression of the L5 root on the left."
 {¶ 10} 4. On October 1, 2004, claimant filed an application for PTD compensation. In support, claimant submitted a report dated September 27, 2004 from T.M. Patel, M.D., that was based on a September 13, 2004 examination:
 On May [sic] 20, 2000, Mr. Hysell underwent surgery for lumbar laminectomy[.] * * *
 With recurrence of symptoms lumbar region, Mr. Hysell required on-going treatment with pain management clinic. In April 2004, he was treated with Raez catheter caudal epidural steroid injections.
 CURRENT COMPLAINTS:
 Mr. Hysell describes that over a period of time, the lower back pain is progressively worse and is associated with radiating pain to the legs, numbness and tingling sensation legs. He experiences significant difficulty with activities of daily living such as walking, standing, bending, lifting, climbing and descending stairs. The low back pain is particularly worse upon arising in the morning. He has experienced episodes of legs giving out on him while walking. *Page 6 
 EXAMINATION:
 Examination reveals Mr. Hysell in significant pain and discomfort. He is guarded in his lumbar spine movements. He walks with an antalgic gait.
 In the standing posture, spinal alignment is abnormal with flattening of the lumbar lorditic curve. Scar secondary to previous surgery is evident. Spinal tenderness is noted over lumbosacral level with tenderness extending to both sacroiliac joints and sciatic notches. There is tenderness on palpation over the midline at the lumbosacral region and in the paraspinous muscles and myofascial paralumbar muscles.
 Forward flexion is carried out cautiously to 20 degrees. Lumbar hyperextension is painful and can be carried out to 15 degrees. Lateral bending to the right and lateral bending to the left cause paralumbar stretch muscular pain and are limited to 15 degrees. Straight leg raising test is positive bilaterally at 25 degrees. Deep tendon reflexes are 1+ both lower extremities. Motor weakness proximal and distal musculature bilaterally is evident. Attempting to kneel or squat is difficult and painful.
 CONCLUSION:
 After reviewing history of accident, clinical course, diagnostic studies, subjective, objective findings, in my opinion, Mr. Hysell with regards to claim number 99-590999, sprain lumbosacral spine, herniated disc L4-5 and lumbar disc degeneration has significant physical limitations as indicated in the enclosed form and he is permanently and totally disabled from engaging into any gainful employment.
 {¶ 11} 5. Dr. Patel also completed a form captioned "Opinion of Physical Capacities." The form asks the physician to indicate the claimant's capacity to sit, stand and walk during an eight-hour workday. The form asks the physician to indicate the capacity "at one time" and the "total during an entire 8 hour day."
 {¶ 12} In response, Dr. Patel indicates that claimant can sit for one hour at a time, can stand for one hour at a time, and can walk for one hour at a time. *Page 7 
 {¶ 13} Dr. Patel indicates that claimant can sit for a total of two hours during an eight-hour day, can stand for a total of two hours during an eight-hour day, and can walk for a total of two hours during an eight-hour day.
 {¶ 14} The form also asks the physician to indicate lifting and carrying capacity. Dr. Patel indicates that claimant can lift or carry up to ten pounds "occasionally" but can never lift 11 pounds or more.
 {¶ 15} Dr. Patel further indicates that claimant can "never" squat, crawl or climb. However, he can bend and reach "occasionally."
 {¶ 16} The form asks the physician to indicate whether the claimant has "use of hands in repetitive action" for (1) "simple grasping," (2) "pushing pulling arm controls," and (3) "fine manipulation." In response, Dr. Patel indicates that claimant cannot perform those functions with either hand. That is, claimant cannot repetitively use his hands for simple grasping, pushing and pulling of arm controls, or fine manipulation.
 {¶ 17} The form asks the physician whether the claimant has "use of feet in repetitive movements of leg controls." In response, Dr. Patel indicates that claimant cannot perform the function with either leg.
 {¶ 18} 6. On December 15, 2004, at the commission's request, claimant was examined by William R.C. Stewart, III, M.D., whose office is located in Knoxville, Tennessee, where claimant now resides. In his three-page narrative report, Dr. Stewart wrote:
 This independent medical evaluation is performed at the request of the Industrial Commission of Ohio to determine impairment due to acute lumbosacral strain, herniated disk L4-5, and aggravation of degenerative disk L4-5 and L5-S1.
 * * * *Page 8 
 Medical History of Illness/Injury: Mr. Hysell is a 54-year-old Caucasian gentleman who presents for independent medical examination. He states that on 10/25/99 he injured his back at work while lifting a box. On 5/20/00 he had lumbar surgery. He states that he has had no improvement since the surgery and has not returned to work. He states that he now has constant pain in the lower back which extends into the hips and both legs with the left being worse than the right. He has noted some "giving way" of the right leg, secondary to pain. He states that the left leg occasionally has swelling to the level of the knee. He is unable to climb steps and has to stop walking due to pain at least [sic] than 50 feet on level ground. He uses a wheelchair when he goes out shopping with his wife. He states that there is no comfortable position to relieve the pain. The pain causes sleep disturbance. * * *
 Past Medical History: Significant only for GERD [gastroesophageal reflux disease][1] . He denies COPD or asthma, coronary artery disease, peptic ulcer disease, hepatic or renal disease.
 * * *
 Physical Examination: * * * Generally, well-developed, well-nourished Caucasian male in obvious discomfort. He walks with a cane. He has antalgic splinting of the spine and when changing positions during examination. * * * Flexion and extension of the lumbar spine during the examination was essentially zero. He has superficial tenderness over the surgical scar and in the paraspinous lumbar muscles. There is no pain with axial compression. He has no gluteal muscle tenderness. Manual motor testing of the lower extremity is 5/5 in the knee flexors and extensors, plantar flexors and dorsal flexors, and EHL. Heel-and-toe walking was not tested due to the patient's difficulty with balance. Deep tendon reflexes were 2+ at the patella with reinforcement and 1+ at the Achilles; bilaterally symmetrical. Toes were downgoing to Babinski's maneuver. Straight leg raise causes low back pain bilaterally without radicular signs. Sensory exam was normal except for decreased sensation in the left lateral lower leg in the distribution of L5. *Page 9 
 Additional Records: Records received from the Industrial Commission of Ohio were reviewed. These records indicate that Mr. Hysell had minimal improvement in the immediate post-operative period and was unable to complete rehabilitation due to pain. He has not benefited from epidural steroid injections or a neurostimulator. * * *
 Discussion: Mr. Hysell appears to have a chronic pain syndrome which has not responded to any treatment. Chapter 15 of The American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment, Fourth Edition, addresses chronic pain. Figure 2 is a Pain Intensity-Frequency Grid which describes characterization of pain. However, there are no instructions on converting this characterization to whole person impairment. Mr. Hysell's chronic pain and pain-related behavior appear very well established and are unlikely to change significantly in the future.
 Opinion: According to Section 3.3i on page 106 of the AMA Guides to the Evaluation of Permanent Impairment, Fourth Edition, Mr. Hysell's impairment resulting from the allowed conditions of acute lumbosacral strain, herniated disk L4-5, and aggravation of degenerative disk L4-5 and L5-S1 are best described by DRG Thoracolumbar category III which results in a 15% impairment to the whole person. There is no other criteria in the Guides for additional impairment beyond this 15%.
 {¶ 19} 7. On December 29, 2004, Dr. Stewart completed the "Physical Strength Rating" form published by the Ohio Bureau of Workers' Compensation. The form begins with the following pre-printed instruction:
 My opinion of this injured worker's physical strength is indicated below and is based solely on the allowed condition(s) that falls within my specialty. The medical evidence supporting this opinion is presented in the narrative portion of my report. The injured worker's age, education, and work history are not considered in this estimate.
(Emphasis sic.) *Page 10 
 {¶ 20} On the form, the physician is asked to indicate by marking whether "[t]his injured worker is capable of physical work activity as indicated below," or whether "[t]his injured worker is not capable of physical work activity." By his mark, Dr. Stewart indicates the latter, i.e., that claimant is not capable of physical work activity.
 {¶ 21} 8. Following a July 6, 2007 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation starting September 13, 2004. The SHO's order explains:
 Dr. Patel examined the injured worker on 09/13/2004, and concluded in a report dated 09/27/2004 that the injured worker was permanently and totally disabled related to the allowed conditions in the claim.
 Dr. Stewart examined the injured worker on behalf of the Industrial Commission and in reports of 12/15/2004 and 12/29/2004 concludes the injured worker is permanently and totally disabled related to the allowed conditions in the claim.
 Based on the reports of Dr[s]. Patel and Stewart, the injured worker's application filed 10/01/2004 is granted.
 The start date of benefits is based on the examination of the injured worker on 09/13/2004 by Dr. Patel and his 09/27/2004 report.
 {¶ 22} 9. On September 28, 2007, the three-member commission mailed an order denying relator's request for reconsideration.
 {¶ 23} 10. On December 20, 2007, relator, Schottenstein Stores Corporation, filed this mandamus action.
Conclusions of Law: {¶ 24} The commission relied upon the reports of Drs. Patel and Stewart in determining that claimant is permanently and totally disabled based solely on the allowed conditions of the industrial claim. This determination eliminated the need to review the *Page 11 
nonmedical factors. Here, relator challenges the reports of Drs. Patel and Stewart, claiming that the reports do not constitute some evidence upon which the commission can rely. Accordingly, the reports of each physician shall be analyzed in light of relator's arguments.
 {¶ 25} The magistrate finds that the reports of Drs. Patel and Stewart do constitute some evidence upon which the commission can rely. Thus, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 26} Relator claims that the reports of both doctors impermissibly consider nonallowed conditions in rendering an opinion that claimant cannot perform sustained remunerative employment. Relator also claims that the reports of both doctors are equivocal and so internally inconsistent that they cannot constitute evidence.
 {¶ 27} Nonallowed conditions cannot be used to advance or defeat a claim for PTD compensation. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. The mere presence of a nonallowed condition in a claim does not itself destroy the compensability of the claim, but the claimant must show that one or more allowed conditions independently cause disability. State ex rel. Bradley v. Indus. Comm. (1997),77 Ohio St.3d 239.
 {¶ 28} Equivocal medical opinions are not evidence upon which the commission can rely. State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id. *Page 12 
 {¶ 29} A medical report can be so internally inconsistent that it cannot be some evidence upon which the commission can rely. State exrel. Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445 (despite "normal" physical findings, Dr. Katz assessed a high degree of impairment and then concluded that the claimant could perform heavy foundry labor);State ex rel. Taylor v. Indus. Comm. (1995), 71 Ohio St.3d 582 (finding that another report from Dr. Katz contained the same infirmities as those contained in his report in Lopez).
 {¶ 30} According to relator, Dr. Patel's reports indicate reliance upon nonallowed conditions. This argument is premised upon that portion of Dr. Patel's "physical capacities" report in which repetitive use of the hands is restricted. That is, Dr. Patel indicates that the hands could not be repetitively used for simple grasping, pushing and pulling of arm controls, or for fine manipulation.
 {¶ 31} Because the industrial claim is not allowed for what relator calls "upper extremity conditions," relator concludes that Dr. Patel's restrictions on repetitive use of the hands shows that Dr. Patel used nonallowed conditions to support his opinion that claimant is unable to engage in gainful employment. Relator points out that the "physical capacities" report is specifically referenced in the concluding paragraph of Dr. Patel's narrative report. The magistrate disagrees with relator's argument.
 {¶ 32} Analysis begins with the observation that there is no evidence in the record that claimant's upper extremities have ever been injured either industrially or nonindustrially. However, it is conceivable that repetitive movement of the noninjured upper extremities could aggravate a severe back injury. Given that there is no injury to either upper extremity, Dr. Patel's restrictions on repetitive hand use can easily be viewed *Page 13 
as restrictions designed to prevent aggravation of the allowed conditions of the claim. Clearly, Dr. Patel's restrictions on repetitive hand use need not be viewed as reliance upon a nonallowed condition and, thus, relator's argument must fail.
 {¶ 33} Relator also claims that Dr. Patel's reports are internally inconsistent under Lopez. According to relator, the "physical capacities" report shows that claimant is medically able to perform sedentary work despite Dr. Patel's opinion that claimant is permanently and totally disabled.
 {¶ 34} Ohio Adm. Code 4121-3-34(B)(2)(a) provides:
 "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 35} In State ex rel. Toth v. Indus. Comm. (1997),80 Ohio St.3d 360, it was held that part-time work can constitute sustained remunerative employment. However, the court did not indicate specifically how many hours of part-time work are needed to constitute sustained remunerative employment.
 {¶ 36} In State ex rel. [Clevite] Elastomers v. Torok, Franklin App. No. 02AP-116, 2002-Ohio-4770, at ¶ 19, a case cited by relator, this court adopted its magistrate's decision, which states:
 Although the Supreme Court has not defined the term "part-time work" as used in Toth, the courts have provided guidance in unreported opinions. In State ex rel. DeSalvo v. May Co. (1999), Franklin App. No. 98AP-986, affirmed (2000), 88 Ohio St.3d 231, 724 N.E.2d 1147, the court *Page 14 
indicated that, where a claimant is capable of working more than four hours per day by combining his abilities to sit, stand and walk, the commission may find the worker capable of sustained remunerative employment. * * *
 {¶ 37} In State ex rel. Gokey v. Indus. Comm., Franklin App. No. 05AP-65, 2005-Ohio-6759, another case cited by relator, this court upheld the commission's rejection of a report from a Dr. Wirebaugh. The commission had found Dr. Wirebaugh's reports to be internally inconsistent because, on a form, he estimated that Gokey could sit for five to eight hours per day if she were permitted to change positions as needed, whereas in his narrative report, he had opined that Gokey is "permanently and totally disabled from remunerative employment." Id. at ¶ 25.
 {¶ 38} Based upon the above authorities, relator argues that Dr. Patel's PTD opinion is inconsistent with his "physical capacities" report because the "physical capacities" report allegedly shows that claimant is medically capable of sedentary employment.
 {¶ 39} At oral argument before the magistrate, relator's argument was further refined. It was argued that claimant's capacity for sitting for two hours during an eight-hour workday combined with his capacity for either standing or walking for two hours in an eight-hour workday would give claimant four hours per day to engage in sustained remunerative employment.
 {¶ 40} The flaw in this argument is readily apparent from the commission's definition of sedentary employment which states that "[s]edentary work involves sitting most of the time, but may involve walking or standing for brief periods of time."
 {¶ 41} Obviously, relator's "four hour" argument would have claimant sitting one-half of the time, rather than most of the time, as required by the definition. Thus, it cannot *Page 15 
be concluded from the "physical capacities" report that claimant can work four hours per day at sedentary employment.
 {¶ 42} Obviously, Dr. Patel did opine that claimant can sit for two hours per day and perhaps it can be argued that claimant can perform sedentary employment for more than two hours, but something less than four hours per day.
 {¶ 43} Even if such an argument can be made from the "physical capacities" report, the commission was not required to find that the "physical capacities" report shows an ability to perform sedentary employment on a sustained remunerative basis. Certainly, this case differs substantially from the situation in Gokey where Dr. Wirebaugh's assessment indicated an ability to sit for five to eight hours per day.
 {¶ 44} Based upon the above analysis, the magistrate finds that relator's challenge to Dr. Patel's reports is unpersuasive. The magistrate finds that Dr. Patel's reports do constitute some evidence upon which the commission can and did rely to support the PTD award starting September 13, 2004, the date of Dr. Patel's examination.
 {¶ 45} Turning to Dr. Stewart's reports, relator claims that Dr. Stewart's statement that claimant "appears to have a chronic pain syndrome" shows that Dr. Stewart used a nonallowed condition to support his opinion that claimant is not capable of physical work activity, i.e., is not able to perform sustained remunerative employment. Relator points out that "chronic pain syndrome" is not an allowed condition of this industrial claim. Relator asserts that "chronic pain syndrome" is not merely a symptom of the allowed conditions, but "is a condition in itself." (Relator's brief, at 7.)
 {¶ 46} Relator cites to court cases in which "chronic pain syndrome" was an allowed condition of a claim. See State ex rel. Arthur v. Indus.Comm., Franklin App. *Page 16 
No. 05AP-1018, 2006-Ohio-6776, at ¶ 2; State ex rel. Alley-Yazell v. TrimSystems, Inc., Franklin App. No. 05AP-1107, 2006-Ohio-5775, at ¶ 8.
 {¶ 47} Relator further points out that "chronic pain syndrome" is identified by ICD-9 code number 338.4.
 {¶ 48} Relator also discusses at length this court's decision inState ex rel. Am. Natl. Red Cross v. Smith, Franklin App. No. 05AP-66,2005-Ohio-5650.
 {¶ 49} In the Smith case, the commission awarded PTD compensation to Clinton L. Smith based upon a report from treating physician Dr. Gurley who opined that Smith "is permanently and totally disabled due to his residual signs and symptoms related to the specific workers compensation injury." Id. at ¶ 9. As reported in the Smith case, Dr. Gurley further reported:
 * * * Mr. Smith suffers not only chronic residual pain syndrome but severe and functionally disabling residual neurological signs and symptoms resulting from his index injury and the associated spinal cord injury which was associated with this injury. His residual cervical myelopathy will, again within reasonable medical certainty, will not improve and has even been shown in the medical literature to possess potential for progression in spite of adequate surgical decompression and stabilization. This is a paramount consideration in determining the fact that his myelopathy leaves him with permanent functional limitations in the form of gait and motor disturbances and limitations as well as chronic pain.
 With extensive experience in the field of management of spinal injuries in the workers compensation sector, it is my opinion, that within a reasonable degree of medical probability and certainty, Mr. Clinton's [sic] Smith has reached maximal medical improvement with severe residual and functionally disabling impairments which are permanent in character. * * * It is also my opinion that a [sic] he would be unable to achieve or sustain or engage in any employment in the foreseeable future. It is my opinion that, within the classifications of the functional capacity *Page 17 
evaluation, he would not even be able to function with in [sic] a sedentary classification.
Id.
 {¶ 50} In Smith, this court held that Dr. Gurley's report was some evidence supporting the commission's PTD award. This court reasoned:
 * * * Dr. Gurley's notation that claimant suffers from "chronic residual pain syndrome" does not require, as relator suggests, that the staff hearing officer conclude the doctor considered a non-allowed condition. * * * The staff hearing officer properly could view Dr. Gurley's report as addressing a symptom caused by claimant's allowed condition, as Dr. Gurley specifically relates the pain to claimant's industrial injury.
Id. at ¶ 3.
 {¶ 51} Suggesting that the Smith case supports elimination of Dr. Stewart's reports from evidentiary consideration, relator here argues:
 * * * In that case, however, the physician whose report was under consideration was the claimant's treating physician, and the record included the physician's office notes and other reports. Id., ¶ 27. As a result, this Court found that the treating physician's reports showed that he was well aware of the conditions allowed in the claim, and that he was not opining that the claim should be additionally allowed for chronic pain syndrome. Id. In the case at bar, Dr. Stewart is not a treating physician; he saw Hysell just once, and his report fails to specifically relate the chronic pain syndrome to Hysell's allowed conditions; it does not even opine that the allowed conditions are causing the chronic pain syndrome. Instead, the report addresses this condition in a separate paragraph and thereby treats it as a separate condition[.]
(Relator's brief, at 8.)
 {¶ 52} The magistrate disagrees with relator's argument that theSmith case supports the evidentiary elimination of Dr. Stewart's reports in the instant case. *Page 18 
 {¶ 53} In the same paragraph of the report designated as the "[d]iscussion," Dr. Stewart references a "chronic pain syndrome" while indicating that claimant's "chronic pain and pain-related behavior appear very well established and are unlikely to change significantly in the future." Dr. Stewart does this while explaining that the relied-upon AMA Guides he used to assess the 15 percent impairment for the allowed conditions provide no instruction on converting chronic pain to a percentage of whole person impairment. Thus, as he further indicates in his "[o]pinion" paragraph, the 15 percent assessment does not include an assessment of "chronic pain."
 {¶ 54} Contrary to relator's assertion, Dr. Stewart does relate "chronic pain syndrome," the "chronic pain" and the "pain-related behavior" to the industrial injury. Just how clearly this is done is a matter within the commission's authority to interpret and weigh the evidence. That is, the commission could conclude that Dr. Stewart's reference to a "chronic pain syndrome" was nothing more than a reference to the pain associated with the allowed conditions of the claim.
 {¶ 55} Moreover, that Dr. Stewart is not the treating physician, while Dr. Gurley was so in the Smith case, does not require a different result. What matters is that Dr. Stewart did relate his reference to a "chronic pain syndrome" to the allowed conditions of the industrial claim.
 {¶ 56} In short, it is the magistrate's view that the Smith case supports the upholding of the commission's reliance upon Dr. Stewart's reports.
 {¶ 57} Relator further contends that Dr. Stewart's reports are so internally inconsistent that they cannot constitute some evidence. *Page 19 
 {¶ 58} Citing State ex rel. Roy v. Indus. Comm. (1998),83 Ohio St.3d 199, 203, for the court's statement that a Dr. Hanington assessed "a low fifteen percent impairment," relator concludes that a doctor's 15 percent impairment rating, by law, automatically precludes him or her from rendering an opinion that the industrial injury prohibits sustained remunerative employment. (Relator's brief, at 11.) Relator's conclusion is incorrect.
 {¶ 59} Analysis begins with the observation that in the caselaw, the Supreme Court of Ohio has, on occasion, characterized an impairment rating in its discussion of medical reports at issue in a mandamus action involving workers' compensation. For example, in State ex rel.Beiber v. Metco Welding Co. (1996), 77 Ohio St.3d 1, 3, the court states:
 We have similar difficulty with the commission's characterization of a fifty-nine percent impairment as being "low to moderate." We note that in State ex rel. Lopez v. Indus. Comm.
(1994), 69 Ohio St.3d 445, 449, 633 N.E.2d 528, 531, we viewed a fifty percent impairment as high. * * *
 {¶ 60} In State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693, the court refused to grant a full writ of mandamus pursuant to State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315, following the court's determination that the commission's order denying PTD compensation failed to comply with State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203. The Domjancic court instead granted a limited writ, explaining:
 * * * Generally, in cases where Gay relief has been recommended, the commission's order has coupled vocationally unfavorable evidence with medical evidence that assessed a relatively high degree of physical impairment. This case does not fit that profile. * * * *Page 20 
Id. at 697.
 {¶ 61} In Domjancic, the commission had relied upon the medical report of commission specialist Dr. Joseph I. Gonzalez who assessed a "16% permanent partial impairment of the whole person for the allowed conditions recognized in this claim." Id. at 693.
 {¶ 62} Presumably, the Domjancic court viewed a 16 percent permanent partial impairment as not being a "relatively high degree of physical impairment." Id. at 697.
 {¶ 63} Notwithstanding that cases can be found in which the courts have characterized an impairment rating, relator cites to no case that holds that a doctor's impairment rating for the allowed conditions precludes him or her from rendering an opinion that the claimant is incapable of sustained remunerative employment. The lack of a direct correlation between a doctor's impairment rating and the claimant's ability to perform sustained remunerative employment is recognized at Ohio Adm. Code 4121-3-34(D)(3)(f):
 The adjudicator shall not consider the injured worker's percentage of permanent partial impairment as the sole basis for adjudicating an application for permanent and total disability.
 {¶ 64} Moreover, relator's suggestion that Dr. Stewart's 15 percent impairment rating is low fails to recognize that, with respect to claimant's chronic pain, Dr. Stewart cautioned "[t]here is no other criteria in the Guides for additional impairment beyond this 15%" for the allowed conditions of the claim. Thus, the 15 percent rating does not include the chronic pain. *Page 21 
 {¶ 65} In short, there is no inconsistency as a matter of law between Dr. Stewart's narrative evaluation of the allowed conditions and his conclusion on the physical strength rating form that "[t]his injured worker is not capable of physical work activity."
 {¶ 66} In summary, the magistrate finds that the reports of Drs. Patel and Stewart do constitute some evidence upon which the commission can and did rely.
 {¶ 67} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] See Taber's Cyclopedic Medical Dictionary (20 Ed. 2005) 871.